Vincent CALDARO, Plaintiff,

v.

BALTIMORE AND OHIO RAILROAD COMPANY, Defendant.

Civ. No. 13710.

United States District Court
E. D. New York.

June 14, 1956.

Colin & Brewster, Brooklyn, N. Y. (Theodore D. Rothenberg, Brooklyn, N. Y., of counsel), for plaintiff.

Alexander & Green, New York City (Robert Schwebel, Donald N. Dunn, New York City, of counsel), for defendant.

LUMBARD, Circuit Judge.

This is an action brought by Vincent Caldaro against the Baltimore and Ohio Railroad Company for injuries sustained in an accident which occurred in the course of his employment on August 11, 1952. The plaintiff invokes the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and various provisions of New York law.

By its answer the defendant asserted as an affirmative defense that the plaintiff's exclusive remedy is under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The parties now seek to test this defense by a motion to dismiss the complaint and a cross-motion to strike the defense from

the answer. For the purposes of these motions the parties have stipulated the following facts:

"1. On August 11, 1952, the defendant owned, operated and managed and controlled a steel car float, known as float number 187, which was in excess of 18 tons net. The said float was at the time of the accident complained of, in navigable waters alongside pier 66, North River, and on said float there were at least 2 railroad freight cars.

"2. The plaintiff, Vincent Caldaro, was employed by the defendant as a stowman, or freight handler, on August 11, 1952, and reported to work at approximately 8 A.M., and he continued in the employ of the defendant until he met with an accident between 11:30 A.M. and 12 Noon of said date. The duties of the plaintiff during said time as aforesaid, were to remove freight from one of the cars on said car float to pier 66, North River, by means of a hand truck. And he was engaged in these duties from approximately 8 A.M. to the time of the accident.

"3. That the means of passage of the plaintiff from the car float to the pier was over and along 2 gangplanks, each of which was 20 feet long, 3 and one-half feet wide, with 18 inch metal ends, joined together end to end by means of a rope attached to hooks which were a permanent part of each gangplank. The plaintiff's route was from the float down one gangplank to the point where it was tied to the second gangplank, and then down the second gangplank to the floor of the pier. At the intermediate point where the gangplanks were tied together with rope both gangplanks were supported by boxes or horses which boxes or horses reached on the floor of the pier. Plaintiff met with his accident on the second gangplank which was the gangplank with one end resting on the boxes or horses and the other end resting on the pier. He was proceeding from the float to the pier at the time of the accident.

"4. At the time the plaintiff met with his accident he was transporting a case of merchandise weighing approximately 550 pounds. He was pulling a hand truck on which the case was located. At the time that plaintiff is alleged to have sustained such injuries the defendant had secured compensation to its employees engaged in maritime employment upon the navigable waters of the United States, including this plaintiff, for disability or death from injury arising out of and in the course of such employment under and pursuant to the Longshoremen's and Harbor Workers' Compensation Act, as set forth in Title 33 of the United States Code, Chapter 18."

On argument of their motions the parties further stipulated "that the gangplanks and the boxes or horses were owned by the defendant but were supplied by the dock and were not part of the ship's equipment."

This is one of those cases which is on the very verge of the admiralty jurisdiction where a dividing line must of necessity be arbitrarily drawn. It seems to me, however, that it does come within the admiralty jurisdiction and within the scope of the Longshoremen's and Harbor Workers' Compensation Act.

Since The Admiral Peoples, 1935, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 it has been settled that injuries which occur on a ship's gangplank are within the admiralty jurisdiction even though they occur on a portion of the gangplank which extends over a dock or pier. In that case the plaintiff had reached the shore end of the gangplank and was injured in stepping from the plank to the dock. For the purpose of determining jurisdiction the gangplank was considered to be a part of the vessel and thus an injury which occurred on it was as much "upon navigable water" as an in-

jury on any other part of a ship which may happen to extend over the land.

■ The plaintiff argues first that the test of whether an accident occurs "upon navigable waters" under the Longshoremen's Act is different from the traditional test of admiralty jurisdiction over torts. I find this argument without substance. Pennsylvania R. Co. v. O'Rourke, 1953, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 makes it clear that the locality of the accident is decisive. The phrase "upon the navigable water", used in the Act, 33 U.S.C.A. § 903, and relied on in the O'Rourke case, is the same phrase which has often been used in defining the admiralty jurisdiction over torts. Neither The Admiral Peoples case nor other cases decided since have recognized any distinction between the test of admiralty jurisdiction over torts and the test of Longshoremen's Act coverage. E. g. Ford v. Parker, D.C.D.Md. 1943, 52 F.Supp. 98; Thomson v. Bassett, D.C.W.D.Mich.1940, 36 F.Supp. 956. Such a distinction would be anomalous since it was the purpose of the Longshoremen's Act to provide a remedy throughout the area in which state compensation laws had been abrogated by the assertion of exclusive federal jurisdiction in admiralty.

■ Plaintiff next contends that the Longshoremen's Act does not apply because the gangplank was not a part of the ship's equipment and because it consisted of two planks and the plaintiff was injured on the one nearest the shore.

It is true that in The Admiral Peoples case some emphasis was laid on the fact that the gangplank was provided by the ship as a part of its equipment. I think, however, that this was not a decisive consideration. Ford v. Parker, supra, 52 F.Supp. at page 101. Since the line of demarcation must in any event be arbitrary, the simple test of whether or not the injury occurred on the gangway is preferable to engaging in subtle arguments concerning the source or ownership of its component parts. Whether the gangway is kept on the shore or on the ship, it is used to provide ingress to and egress from the vessel and is in that sense a part of the ship's equipment.

■ Nor does it make any difference that the gangway consisted of two planks rather than one. The planks were bound together end to end and they formed a continuous passageway from ship to shore. No part of the gangway was a fixed or permanent part of the dock. Under these circumstances the plaintiff's injury on the shoreward part of the gangway was within the coverage of the Longshoremen's Act and the complaint must therefore be dismissed.

So ordered.