**Walter BOSTROM, Plaintiff-Appellant,**

v.

**ASTRO CRECIDO CIA, NAV. S.A. et al., Defendants-Appellees.**

**No. 72–1296.**

United States Court of Appeals, First Circuit.

Heard March 6, 1973.

Decided April 6, 1973.

Michael B. Latti, Boston, Mass., with whom Carroll E. Ayers and Kaplan, Latti & Flannery, Boston, Mass., were on brief, for appellant.

Ansel B. Chaplin, Boston, Mass., with whom Joseph P. Rooney and Gaston, Snow, Motley & Holt, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Judge.

Plaintiff, a longshoreman, was part of a gang discharging the *S.S. Oriental Explorer*, a Greek vessel, at the port of Boston. After the hatch to which he was assigned had been opened, the three beams that had supported the boards were lifted and deposited by the winchman on the deck, close to the side of the vessel. The beams could not go directly against the hull because of angular stiffeners rising thereto from the deck. Each beam was 22 feet long, and 8 inches wide at the top and bottom. The bottom, lengthwise, was gibbous, in a sweep or curve, to give more strength in the middle, and at the deepest point the beam was three feet from top to bottom. The gibbous shape is in old-fashioned, foreign design, rarely seen in the port of Boston.

According to plaintiff's witnesses it is the Boston practice to stow beams on their side, one on top of the other, during unloading, but if the beams are high they are sometimes placed upright on their bottoms, side by side, to conserve deck space. In spite of the fact that the *Oriental Explorer's* beams had a sweep bottom, the latter alternative was adopted on the day in question. Concededly the upright position, even with flat-bottomed beams, is less safe. Plaintiff testified that when he was gang boss he never stowed beams upright for this reason. One of plaintiff's

witnesses testified that the instant beams were particularly unsteady when so placed, which would, in fact, seem obvious.

When beams are stowed upright, it is the custom to lash them with a line to the outer rail, or bulwark. Plaintiff was doing this, standing in the process, on top of the beam nearest the hull, when he felt the beam "give," and he slipped and fell into the space between the beam and the hull, injuring himself. Before he fell a witness, and afterwards plaintiff, assertedly saw paper and "gooey stuff," on top of a beam in the area in which he had stood. Plaintiff testified that he fell because of this substance and the beam's moving. No officer or member of the crew of the vessel was present at any time.

Plaintiff sued the owner of the vessel in two counts; one for negligence, the second for unseaworthiness. The jury found for him on the first count, but for the defendant * on unseaworthiness. Various motions were filed by the parties, the upshot of which was the ordering of judgment n. o. v. for the defendant on count one. Plaintiff appeals therefrom.

■■ If the jury had found for the plaintiff on unseaworthiness, which is almost any unsafe condition no matter how transitory, Mitchell v. Trawler Racer, 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (fish gurry on the rail), he would, if we may mix metaphors, be on solid ground. The fact that the unseaworthy condition had been the fault of his employer, and not the defendant, would have been immaterial. Alaska S.S. Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798. We may wonder to what extent the verdict for the defendant on this issue constitutes a denial of the existence of the paper, etc., that had materialized subsequent to plaintiff's description in his answers to interrogatories of the factual

circumstances that allegedly caused the accident. But even apart from this, if we take all the evidence most favorable to plaintiff, we cannot see negligence on the part of the defendant. If there was a substance on the beam before the longshoremen took over, it was not evident to the defendant, but concealed under the hatch-boards. Nor was there any evidence bringing home to the defendant a reason to suppose that the beams would be stowed on their bottoms, so that someone might have to stand on them to make them fast, particularly where their unstable nature due to their design was open and obvious. Clearly the defendant was not obliged to design beams so that they could be stood up, when it was perfectly feasible to lay them down.

■ Even if the Boston practice which, in the light of experience related to rectangular beams, had been uniformly to stow them upright, the maximum obligation of the defendant would have been to warn the stevedore to treat its beams differently, if such a warning was needed. It was the gang boss himself, however, who noted that as soon as the beams landed on deck their design made them unsteady. No further warning was necessary. There was no reason shown to charge the defendant with anticipating that the stevedore would engage in knowingly negligent conduct. *Cf.* Guarracino v. Luckenbach S.S. Co., 2 Cir., 1964, 333 F.2d 646, cert. denied 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543. For such expectation there should be a heavy burden on the plaintiff.

■■ In these circumstances plaintiff is driven to argue that the defendant was negligent because it did not furnish him a safe place to work, regardless of who caused the unsafety. This is just an attempt to equate negligence with unseaworthiness, and is going full circle in the wrong direction. Unseaworthiness is a doctrine of liability which grew out of the belief that

---

* Throughout this opinion by "defendant" we mean the shipowner. In point of fact the appeal is being resisted by the stevedoring company, third party defendant, on whom ultimate liability would fall on account of its warranty of performance.

in certain circumstances, and to certain parties, there should be liability without fault. The jury found, from which there was no appeal, that plaintiff had not proved such a case. He cannot get back aboard by saying that the defendant is an insurer under the negligence count. Plaintiff's case of Beard v. Ellerman Lines, Ltd., 3 Cir., 1961, 289 F.2d 201, rev'd on other gr'ds, Atlanta & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798, involved a shipowner's own negligence in stowage and in permitting a dangerous method of discharging cargo. To the extent that language in the opinion could be read to equate, under all circumstances, unsafeness of a place to work, with negligence, we do not agree with it. Arena v. Luckenbach S.S. Co., 1 Cir., 1960, 279 F.2d 186, cert. denied 364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189; cf. Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562. The maximum duty was "reasonable care." West v. United States, 1959, 361 U.S. 118, 123, 80 S.Ct. 189, 4 L.Ed.2d 161.

Affirmed.