**Paul ROMERO REYES, Plaintiff, Appellant,**

**v.**

**MARINE ENTERPRISES, INC. et al., Defendants, Appellees.**

**No. 73–1097.**

United States Court of Appeals, First Circuit.

Argued Feb. 8, 1974.

Decided April 2, 1974.

James A. Toro, with whom Nachman, Feldstein & Gelpi, San Juan, P. R., was on brief, for appellant.

Charles A. Cordero, San Juan, P. R., for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Romero Reyes, a longshoreman, was injured when he slipped and fell from an allegedly unstable, poorly lit and defective gangway while boarding the CARIBBEAN, a barge owned by defendant Caribbean Barge Corporation. He sued the barge's owner and an associated company for unseaworthiness and negligence. At the close of his evidence the court, upon defendants' motion, directed a verdict on both counts for defendants, and he appealed.

The court stated several reasons for directing a verdict. First, it noted that Romero Reyes was injured a half hour before his shift was to commence; the court intimated, although it did not actually say, that he was not then a longshoreman, engaged in the ship's work, to whom the vessel owner's warranty of seaworthiness runs. Second, the court ruled that the gangway, which was permanently affixed to a pier-based tower and did not belong to the barge, was not a part of the ship or its appurtenances; accordingly, the barge owner's warranty of seaworthiness did not cover the gangway, nor, in the court's estimation, was the owner negligent. As we disagree with the court's conclusions on these issues, we remand for a new trial.

I

■■ It could not be ruled as a matter of law that Romero Reyes was not a longshoreman when injured, hence not entitled to the warranty of seaworthiness. *See* Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099

(1946).[1] He testified to having worked since 1962 for Antilles Shipping Corp., which had been engaged as the CARIBBEAN'S stevedore; several co-workers confirmed that he was a regular Antilles longshoreman. A fellow longshoreman testified that Romero Reyes had worked on the CARIBBEAN the night before. Prior to the accident, Romero Reyes had gone to the pier from his home, intending to work the graveyard (11 p. m.–7 a. m.) shift on the CARIBBEAN shovelling grain. He had arrived at around 10:30, and attempted to speak to his foreman, Francisco Bastard, who was on the barge. Bastard, he testified, was his permanent foreman and gave him work whenever he showed up. After failing to make himself heard above the noise of the machinery, he attempted to board and fell from the gangway.

Any question whether Romero Reyes had actually assumed the status of a working longshoreman would be for the jury. Zeidman v. Gutterson & Gould, 139 F.2d 160 (1st Cir. 1944); Parker v. Long Island R.R., 425 F.2d 1013 (2d Cir.), cert. denied 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970). A workman may be within the scope of his employment while he is on the premises prior to actual commencement of work. See, e. g., Watkins v. New York, N.H. & H. R.R., 290 Mass. 448, 195 N.E. 888 (1935). Cf. Ward v. Atlantic Coast Line R.R., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960); Baker v. Texas & Pac. Ry., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); Morris v. Pennsylvania R.R., 187 F.2d 837 (2d Cir. 1951); Virginian Ry. v. Early, 130 F.2d 548 (4th Cir. 1942). This was not a case where the evidence of employment could be said to be inadequate as a matter of law.[2] See Restatement (Second) Agency § 233, comment a.

Romero Reyes' longshoreman status was, moreover, admitted by defendants both in their answer to the amended complaint and in the pre-trial stipulation. It is unclear why the legal effect of these several admissions was overlooked.

"That which a defendant admits in his answer is binding upon him until he withdraws the admission by a proper amended or supplemental pleading."

Freedom Nat. Bank v. Northern Illinois Corp., 202 F.2d 601, 605 (7th Cir. 1953). Pre-trial stipulations "stand as fully determined as if adjudicated at the trial." 3 J. Moore, Federal Practice ¶ 16.19.

Of course, there are escape valves; a court has discretion, which we would seldom disturb, to allow amendments to pleadings, and it may permit the modification of stipulations to prevent "manifest injustice". See F.R.Civ.P. 16. But no amendment or modification was ever requested or allowed. Although Romero Reyes did not emphatically direct the court's attention to the pleadings and stipulation, we cannot say that he waived their benefits. Cf. F.R.Civ.P. 15(b). The presumption is rather the other way.

■ Defendants must be held to the position they freely adopted prior to trial. If they had cause for relief, they should have moved to amend, thereby forewarning Romero Reyes, who was otherwise entitled to suppose that he had no burden to prove employment. The spirit of flexibility behind the Rules is not intended to permit one of the parties to be booby-trapped. Defendants shall remain bound by admissions in the

---

1. Congress has recently provided that vessels no longer owe a duty of seaworthiness to longshoremen, and are liable solely for their negligence. Longshoremen's and Harbor Workers Compensation Act Amendments of 1972, 86 Stat. 1263, amending 33 U.S.C. § 905 (1970). The amendment is prospective only, Addison v. Bulk Food Carriers, Inc.,

489 F.2d 1041 (1st Cir. 1974), and does not apply to this case.

2. See also O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 85 S. Ct. 1012, 13 L.Ed.2d 895 (1965). Cf. Continental Ins. Co. v. Byrne, 471 F.2d 257, 260 (7th Cir.), cert. denied 406 U.S. 918, 92 S. Ct. 1767, 32 L.Ed.2d 117 (1972).

pleadings and pre-trial stipulation unless the district court is later persuaded, for good cause shown, that they should be relieved.

## II

The gangway from which Romero Reyes fell was owned and controlled by a concern we shall call Molinos. It did not belong to the barge or its owner. Suspended from a tower on pilings next to the dock, it could be raised or lowered by cables attached to the tower. The court concluded that the injury was caused by "pierside equipment attached to the pier based structure and not part of the ship or its appurtenances and that there was no member of the crew of the ship directing the plaintiff nor having any control over the plaintiff or his activities at the time." Were the vessel owner's duty determined by ownership of the gangway, we would agree with the district court. It is undisputed that a smaller portable structure was the only structure in the nature of a gangway actually belonging to the barge, and it was not in use at the time of the accident. The apparatus from which plaintiff fell was the regular means of boarding and leaving the vessel.

The seaworthiness warranty is not, however, limited to gear "owned" by the shipowner, and while the phrase "equipment appurtenant" to the vessel suggests equipment "belonging" physically to the vessel, it may, and in this case does, include equipment vital to the vessel's mission that does not accompany it while at sea. "Seaworthiness" comprehends the owner's duty to supply his crew with a suitable ship and equipment, and this includes providing them with a suitable means to board and dis-

embark. The duty thus extends to the gangway by whomever supplied, owned or controlled. A crewman injured by an unfit hence "unseaworthy" gangplank may recover against the vessel's owner.[3]

In Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), the Court spoke of the gangway as the dividing line between admiralty and state jurisdiction. Id. at 207, 92 S. Ct. 418. Respondent Law (a longshoreman injured on the pier) could not recover because he was not injured by the ship's equipment, and because "the accident did not occur aboard ship or on the gangplank." Id. at 214, 92 S.Ct. at 426. [Emphasis supplied.]

Appellees argue that in Victory Carriers the Court might not have been thinking of pier-based ramps owned by others, nor of injuries to persons embarking rather than going ashore. Cf. The Brand, 29 F.2d 792 (D.Ore.1928), app. dismissed sub nom. Piper v. Knudson, 45 F.2d 1017 (9th Cir. 1930). But see The Shangho, 88 F.2d 42 (9th Cir.), cert. denied, 301 U.S. 705, 57 S.Ct. 938, 81 L.Ed. 1359 (1937). However, it would be entirely impractical to make the existence of a maritime cause of action turn on such fortuitous distinctions; either the crew member is guaranteed a suitable means of ingress and egress to the vessel or he is not. There should not be the possibility of a different answer in every case. As the Court said in Victory Carriers, supra, 404 U.S. at 214 n. 14, 92 S.Ct. at 426,

> "Reliance upon the gangplank line as the presumptive boundary of admiralty jurisdiction, except for cases in which a ship's appurtenance causes damage ashore, recognizes the traditional limitations of admiralty juris-

---

3. It may, at first glance, seem harsh to hold the vessel owner for the fault of a shore-based operator. But the owner may often be entitled to indemnity, and may, of course, protect himself by private agreement and by insurance. For purposes of this suit, fault as between tort feasors is secondary to enforcement of the maritime worker's right to a seaworthy vessel and appurtenances.

"The fact that the unseaworthy condition [is] the fault of [the longshoreman's] employer, and not the defendant, [is] immaterial." Bostrom v. Astro Crecido CIA, 477 F.2d 718, 720 (1st Cir. 1973). See Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954) (per curiam), aff'g, 205 F.2d 478 (9th Cir.).

diction . . . and decreases the arbitrariness and uncertainties surrounding amorphous definitions."

The authorities are virtually unanimous that maritime liability encompasses the gangway. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); Brady v. Roosevelt S.S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943); Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); Tullis v. Fidelity & Cas. Co. of New York, 397 F.2d 22 (5th Cir. 1968); O'Keeffe v. Atlantic Stevedoring Co., 354 F.2d 48 (5th Cir. 1965).

In Ford v. Parker, 52 F.Supp. 98 (D. Md.1943), the ship's watchman fell while boarding via a pier-based ladder. The court found it immaterial that the ladder was provided and maintained by a third party, because anything "furnishing ingress to or egress from the ship, has been regarded as part of the ship's equipment . . ." *Id.* at 100. The rule is

"simple and easily applied to situations which have heretofore been difficult of decision. And it seems entirely consistent with the real nature of the subject matter. Employes whose duties are on ships and require them to board and leave ships are engaged in a purely maritime activity . . . . In going to and fro in the performance of their duties it is reasonable that they should use and rely upon the safety of the only means of ingress to or egress from the ship as part of the ship's equipment." *Id.* at 101.

In Caldaro v. Baltimore & O.R.R., 166 F.Supp. 833 (E.D.N.Y.1956), a railroad worker was injured walking down a long gangway supplied "by the dock and were not part of the ship's equipment." *Id.* at 835. The court opted for a clear cut boundary rather than for

"subtle arguments concerning the source or ownership of its component parts. Whether the gangway is kept on the shore or on the ship, it is used to provide ingress to and egress from the vessel and is in that sense a part of the ship's equipment." *Id.* at 836.

*Accord,* West v. Erie R.R., 163 F.Supp. 879 (S.D.N.Y.1958); Job v. Erie R.R., 79 F.Supp. 698 (S.D.N.Y.1948). *See* Lunsford v. Bethlehem Steel Corp., 269 F.Supp. 570 (D.Md.1967); Olsen v. Isbrandtsen Co., 209 F.Supp. 6 (S.D.N.Y. 1962). In a case decided since *Victory Carriers,* it has been held that the warranty of seaworthiness attaches to a catwalk permanently affixed to the pier because it "was an integral part of the equipment used in getting on and off" the ship. Kearney v. Savannah Foods & Indus., Inc., 350 F.Supp. 85, 90 (S.D. Ga.1972).

■■ In view of the foregoing, our views on the negligence claim may be of little practical significance; however, we state them, though with perhaps less certainty.[4] Because the means of ingress or egress, by whomever furnished, are an "appurtenance" of the vessel, the owner has a duty of care regarding them. The owner is thus liable for a negligent failure to inspect a gangway and to warn against defects reasonably apparent from inspection or to take steps to repair or replace it. We finding nothing to the contrary in Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). *Cf.* Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960); Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413 (1959); Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L. Ed. 561 (1944). We hold, therefore, that Romero Reyes was entitled to take his case to the jury on the issues of both unseaworthiness and negligence.

Reversed and remanded for a new trial.

---

4. In so stating, we refer to cases preceding the 1973 Amendments to the Longshoremen's and Harbor Workers Compensation Act, *supra* n. 1. We have no need to consider, and do not consider, what duties and liabilities may exist under the 1972 Amendments.