Fred RUSSELL, Plaintiff,

Interstate Towing Company, a corporation, Defendant-Appellant,

v.

CITY ICE AND FUEL COMPANY OF POINT PLEASANT, a corporation, Defendant-Appellee.

No. 74–1519.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 19, 1975.

Decided March 3, 1976.

George S. Sharp, Charleston, W. Va., for appellant.

Charles E. Hurt, Charleston, W. Va., on brief for appellee City Ice and Fuel Co. of Point Pleasant.

Rudolph L. Di Trapano (William J. Curry, Di Trapano, Mitchell, Lawson & Field, Charleston, W. Va., on brief), for appellee Fred Russell.

Before HAYNSWORTH, Chief Judge, WINTER and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge:

The plaintiff, a member of the crew of the tug *Inca*, fell while carrying a load of supplies for the *Inca* across a "fuel flat" to which the *Inca* was moored. He sued Interstate Towing Company, the owner of the *Inca*, on theories of unseaworthiness of the *Inca* and of Jones Act negligence of his employer. The complaint also named City Ice and Fuel Company, the owner of the fuel flat, on a negligence claim.[1] There was a cross-claim by Interstate against City Ice and Fuel for indemnity.

The district court severed the three claims, trying first Russell's claims against Interstate before a jury from which the plaintiff obtained a verdict of $80,000. Some months later, there was a trial of Interstate's indemnity claim against City Ice in which the judge found no duty of indemnification, based principally upon a finding that there had been no violation by City Ice of a duty to Russell. Still to be tried, however, is Russell's claim against City Ice, for he was not a party to the trial on the claim of indemnity.

We vacate both judgments and remand with instructions that any retrial of claims should be heard and adjudicated in one trial.

On the day of the injury, the *Inca* tied up to the fuel flat of City Ice to load groceries from a refrigerated locker, maintained by City Ice as an accommodation for ships using its facilities, and for the additional purpose of purchasing from City Ice and loading some bottled gas.

Russell and several other members of the crew of the *Inca*, under orders, carried food supplies from the refrigerated locker across the fuel flat to the *Inca*. On his last trip, as Russell was crossing the fuel flat with a heavy load of meat, he slipped or tripped and fell. He testified in the trial of his claim against Interstate that after his fall his clothing and his hair were soaked with a clear odorless fluid which he stated to be a mixture of oil and water. On his earlier trips, Russell had seen no oil on the deck of the fuel flat. No one else saw any on the deck, not even the captain who assisted Russell to his feet.

In the trial of Russell's claim against Interstate, the district court submitted the case to the jury on theories of Jones Act negligence and unseaworthiness. He charged that the doctrine of seaworthiness required that the owner furnish his ship with appurtenances reasonably fit for their intended purposes, clearly permitting the jury to find for the plaintiff on the unseaworthiness claim if there was oil on the deck of the fuel flat, whether or not there was any want of due care on the part of the ship. The jury returned a general verdict in favor of the plaintiff for $80,000.

Months later, when the district court heard Interstate's indemnity claim against City Ice, the parties agreed to receive the testimony previously offered in the trial of Russell's claim against Interstate. City Ice also offered additional evidence. In a deposition, the *Inca's* captain substantially amplified his testimony in the trial of Russell's claim. The captain said he shouted to Russell to split the heavy load of meat, but that Russell disregarded his advice and fell near a hose. The captain had carefully checked the fuel flat and said that, as usual, it was clean and dry. After the fall he carefully examined Russell for injuries, and there was no liquid on Russell or on the fuel flat. The *Inca's* engineer corroborated the captain's testimony that there was no oil or grease on Russell or on the deck of the fuel flat. A co-owner of City Ice and one of its employees also testified that there had been no sale of any fuel or lubricating oil on the day of the injury. There were occasional spills during refueling operations, but these were always promptly and carefully cleaned

1. There is diversity of citizenship between Russell and City Ice and Fuel Company.

up, in addition to which, on each twelve-hour shift change, the deck was carefully inspected and cleaned where needed.

At the conclusion of the trial of the indemnity claim, the district judge, seemingly being persuaded that there was no oil on the deck of the fuel flat, found that no one saw any oil on the deck, that City Ice had no actual or constructive notice of the presence of any oil on the deck, and concluded that City Ice was not bound to indemnify Interstate. The focus seems to have been entirely upon the independent tort theory of indemnity, while other theories, based upon a possible maritime contract or tort, remained unexplored.

Such bifurcation of closely related cases clearly is wasteful of judicial resources and carries with it a high potential for inconsistent results, and the inconsistencies can compound miscarriages of justice. It is true that Russell was entitled to a trial by jury of his claim against Interstate; he will be entitled to one in the trial of his claim against City Ice, while the indemnity claim was properly tried to the court without a jury. In the trial of the indemnity claim, the judge may disagree with the jury's fact finding, but at least in one trial the jury and the judge will find the facts on the basis of the same record, and, bearing in mind the judge's right to award new trials when a jury verdict is heavily against the weight of the evidence, a joint trial of all claims materially reduces the potential for inconsistent results.

We would not reverse if the severance of the closely related claims into three separate trials was the only matter before us, for the avoidable harm is not readily reparable, but there was fatal error in the submission of the unseaworthiness claim to the jury in the trial of Russell's claim against Interstate. There must be a retrial of that claim, and the related claims should be heard and decided in the same trial.

The seaworthiness claim was submitted to the jury on the theory that the fuel flat was an appurtenance of the vessel *Inca*. Russell undertakes to support this submission on that theory.

It is true, of course, that a vessel in navigation ordinarily warrants the seaworthiness of the means provided for members of its crew to board and to disembark. This warranty of means of ingress and egress includes a gangway by whomever owned or controlled when supplied for such a purpose.[2] It has even been held that when one trawler ties up to the outboard side of another moored trawler, so that crewmen of the second must cross the first to reach the dock, the first trawler is comparable to a gangway and is within the general warranty of seaworthiness of the second.[3] But a vessel's warrant of seaworthiness does not extend beyond the gangway to the dock.[4]

The fuel flat involved here, however, was not a gangway; it was a part of the dock. It was floating, but more or less permanently moored to the shore, and it constituted the principal portion of the dock of City Ice at Point Pleasant, West Virginia. The fuel flat was capable of being detached from the shore and towed to deeper water for the fueling of deep draft vessels, but in its normal state it was firmly secured to the shore, serving in every substantive way the functions of a dock and in no way those of a vessel in navigation.

Comparable floating structures, more or less permanently moored to a dock and ordinarily used in connection with it,

---

**2.** *The Admiral Peoples*, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); *Reyes v. Marine Enterprises, Inc.*, 494 F.2d 866 (1st Cir. 1974); *Tullis v. Fidelity and Cas. Co. of New York*, 397 F.2d 22 (5th Cir. 1968); *Caldaro v. Baltimore & O.R.R.*, 166 F.Supp. 833 (E.D.N.Y.1956); *Ford v. Parker*, 52 F.Supp. 98 (D.Md.1943).

**3.** *Bradshaw v. The Carol Ann*, 163 F.Supp. 366 (S.D.Tex.1956).

**4.** *Victory Carriers v. Law*, 404 U.S. 202, 206, 92 S.Ct. 418, 30 L.Ed.2d 383 *et seq.* (1971); *Bernard v. U. S. Lines Inc.*, 475 F.2d 1134 (4th Cir. 1973); *Snydor v. Villain & Fassio et Compania Int. Di Genova*, 459 F.2d 365 (4th Cir. 1972); *McCants v. Alcoa Steamship Co.*, 471 F.2d 1371 (5th Cir. 1973); *Cannida v. Central Gulf Steamship Corp.*, 452 F.2d 949 (3rd Cir. 1971).

have been held to be portions of the dock.[5] The fact that such structures are capable of being detached from the land and converted to temporary use as a vessel in navigation is undeterminative. As long as such a structure is securely affixed to the land and is in use as a component of shore facilities, it is not a vessel in navigation, but a dock beyond the reach of an adjacent vessel's ordinary warranty of seaworthiness.

Since, in addition to the Jones Act claim, the case was submitted to the jury on a theory of unseaworthiness under instructions which held the *Inca* responsible for any defect on the deck of the fuel flat, regardless of fault of the *Inca*, the general verdict for the plaintiff cannot be sustained.

*REVERSED AND REMANDED For Further Proceedings Not Inconsistent With This Opinion.*

CRAVEN, Circuit Judge (concurring and dissenting).

A question of fact that can rationally be decided either way is by definition a "jury question." I would leave for jury determination the ultimate question of whether City Ice's floating barge was appurtenant to the vessel or part of the shore. But if we are to decide, I am inclined to think that the barge is sufficiently appurtenant to make the vessel responsible. Walking across the barge was not only the regular, it was the *only*, means of ingress and egress. *See Reyes v. Marine Enterprises*, 494 F.2d 866 (1st Cir. 1972). And such a "gangplank" is not more curious than adjacent shrimp boats moored side by side. *Bradshaw v. The Carol Ann*, 163 F.Supp. 366 (S.D.Tex.1956).

Otherwise, I concur.

---

5. *Powers v. Bethlehem Steel Corp.*, 477 F.2d 643 (1st Cir. 1973); *Cook v. Belden*, 472 F.2d 999 (5th Cir. 1973).