Lawrence A. SARAUW

v.

OCEANIC NAVIGATION CORPORA-
TION and VLCC ANDROS
ATLAS, Appellants.

No. 79–2076.

United States Court of Appeals,
Third Circuit.

Argued April 22, 1980.

Submitted on Remand June 8, 1981.

Decided July 31, 1981.

---

Robert B. White, Jr., Rawle & Henderson, Philadelphia, Pa., for appellants.

Joseph L. Costello, Sonoma, Cal., for appellee.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

This appeal from the district court's award of damages to a longshoreman in his action against a vessel and its owner in which appeal we entered a judgment on May 20, 1980, is again before us, the Supreme Court, —— U.S. ——, 101 S.Ct. 2039, 68 L.Ed.2d 344 having, on the grant of the defendants' petition for a writ of certiorari, vacated our judgment and remanded the appeal to us for reconsideration in the light of that Court's recent decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

Lawrence A. Sarauw, a longshoreman dock worker employed by Hess Oil Virgin Islands Corporation (hereafter Hess), brought this action in the district court against the vessel, VLCC ANDROS ATLAS, and its owner, Oceanic Navigation Corporation (hereafter Oceanic), pursuant to section 18(a) of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, 33 U.S.C.A. § 905(b). That section provides that a longshoreman sustaining injuries attributable to the negligence of the personnel of a vessel may sue the vessel for damages. Sarauw alleged that due to the negligence of the officers of the ANDROS ATLAS in failing to secure to the deck of the vessel the gangway connecting the vessel with the Hess Terminal's No. 3 dock where the ANDROS ATLAS was discharging crude oil, the gangway, when Sarauw attempted to board the vessel by means of it, fell to the dock, Sarauw thereby sustaining the injuries complained of.

After a trial lasting four days, a jury found that Oceanic was negligent, that Sarauw was contributorily negligent, that Hess also was negligent, and that Sarauw's total damages were $190,800.00. The district court, on March 27, 1979, entered judgment for Sarauw reducing the total damages found by the jury by 50%, the jury having determined the degree of fault of Sarauw and Hess to be 25% each. Following the district court's denial, on June 8, 1979, of Sarauw's motion for judgment notwithstanding the verdict and to amend the judgment and Oceanic's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, both parties appealed.

With respect to Sarauw's appeal, we held that the district court's 25% reduction of damages for Hess' negligence was error under *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). Our ruling on that issue was not contested by Oceanic. As to the issues raised by Oceanic on its appeal, on the question of Oceanic's duty of care we concluded that there was sufficient evidence from which a jury could find that Oceanic retained a duty of care with respect to the gangway notwithstanding that it was supplied by Hess, and that Oceanic breached its duty of care. On the question of the district court's instructions based on sections 343 and 343A of the Restatement (Second) of Torts, we held that any error in applying to Oceanic the duty of care set forth in those sections of the Restatement benefited Oceanic and was not ground for reversal of the district court's judgment against Oceanic. With respect to Oceanic's contention, not raised in the district court, that elements of damages awarded Sarauw were duplicative, we held that no reviewable, plain error had been committed. Pursuant to the above rulings, we affirmed that part of the district court's judgment which denied Oceanic's motion for judgment notwithstanding the verdict or for a new trial and vacated that part of the judgment which denied Sarauw's motion for judgment notwithstanding the verdict and to amend the judgment. We remanded the case to the district court with instructions to enter a new judgment restoring the deduction from the jury's damages award made for Hess' negligence.

Oceanic then applied to the Supreme Court for a writ of certiorari. The writ was allowed on May 4, 1981, and on the same day the Supreme Court vacated our judgment and ordered our reconsideration of the cause in the light of the Court's recent rulings in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), explicating the extent of a vessel's duty of care to longshoremen under 33 U.S.C.A. § 905(b). Counsel, at our request, have submitted briefs on the issues raised by the remand.

The facts of the case are set out in our earlier opinion, 622 F.2d 1168 at p. 1171, and we need not repeat them here.

The *Scindia* case gives us no reason to reconsider our conclusion on the damages issue raised by Oceanic's appeal and our position on that issue, stated above, remains unchanged. We, accordingly, proceed to address the liability issues presented by Oceanic's appeal in the light of the ruling of the Supreme Court in *Scindia*. In that case the Court pointed out that under the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, particularly § 905(b), "Congress intended to make the vessel answerable for its own negligence and to terminate its automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore." 451 U.S. at p. ——, 101 S.Ct. at p. 1622. "We are of the view," the Court went on to say, "that absent contract provision, positive law or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoreman for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself." 451 U.S. at p. ——, 101 S.Ct. at p. 1624.

The precise question which this case presents on remand is whether the gangway here involved which was supplied by the stevedore and used by its longshoremen was an appliance which was "within the confines of the cargo operations" assigned to the stevedore within the meaning of the rule laid down in the *Scindia* case and, therefore, outside the general duty of the shipowner to use reasonable care to inspect and supervise for the purpose of discovering and remedying dangerous conditions which might exist or develop in the course of its use. We do not think that the gangway involved in this case falls into that category. Conceivably, there might be a case in which a special gangway, which is in addition to the ship's regular gangway, is supplied by a stevedore for the exclusive use of its longshoremen in carrying out its cargo operation and which, therefore, might be regarded as wholly within the confines of that operation under the *Scindia* rule. But this is clearly not such a case.

Here the stevedore, Hess, which was the owner of the marine terminal at which the ANDROS ATLAS was unloading, required all vessels unloading at its terminal to use only gangways supplied by it, the stevedore. Accordingly, here the gangway supplied by the stevedore became the vessel's gangway in the sense that it was the only gangway available to the vessel. It was, therefore, necessarily used for embarking and disembarking by the officers and crew of the vessel and any others having business on her as well as by the longshoremen. It thus became, when put in place, a basic appurtenance of the vessel, its means of access to the land. *The Admiral Peoples*, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). We are, accordingly, satisfied that *Scindia* does not require us to depart from our original conclusion, which we reaffirm, that Oceanic had the duty to exercise reasonable care with respect to the gangway's being properly secured to the vessel and maintained in safe condition for use. From this duty of care it could not divest itself even though the gangway was supplied by the stevedore, Hess, and at the time of the accident was being used by no one but the injured longshoreman. *Romero Reyes v. Marine Enterprises, Inc.*, 494 F.2d 866, 870 (1st Cir. 1974).

Oceanic argues in its brief on remand that under *Scindia* a shipowner's ordinary duty of care may be modified by contract and that in its "contractual undertaking

with Oceanic, Hess obligated itself to . . . furnish, secure, maintain and monitor the gangway to be used on Oceanic's vessel." We are not convinced, however, that *Scindia* instructs that a shipowner may contract away its duty of care with respect to such an essential appurtenance of the ship as the gangway. Moreover, while there was evidence in the record that Hess instructed its personnel to monitor the safety of the gangways of the ships docked at its terminal, there was no evidence of an agreement under which Hess undertook to relieve the ANDROS ATLAS of its legal obligation concerning the gangway here involved.

In the present case there was evidence from which the jury could find, as it did, that Oceanic failed in its duty of exercising due care to discover and correct the unsafe condition of the gangway which, obviously, became more and more critical as the vessel rose in the water during unloading. We remain satisfied, as we were when the case was here before, that the instructions fairly presented this issue to the jury and that Oceanic's motion for judgment notwithstanding the verdict or for a new trial was properly denied. The other issues are discussed in our former opinion and are not involved in this remand. We, therefore, need not discuss them here.

The judgment entered by this court in this case on May 20, 1980 will be reinstated.

ADAMS, Circuit Judge, concurring.

I agree that our previous judgment in this case should be reinstated, but I write separately to illustrate why, in my view, the reasoning in the prior opinion is consistent with *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

Although the thrust of the opinion in *Scindia* is to restrict the shipowners' liability to longshoremen injured in the midst of stevedoring operations, the case does not proclaim that a vessel may never be found negligent in connection with mishaps suffered by longshoremen. The Supreme Court drafted at least two exceptions to the freshly promulgated policy against holding the shipowner responsible. First, the Court

noted that it is "accepted that the vessel may be liable . . . if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas or from equipment under the active control of the vessel during the stevedoring operation." 101 S.Ct. at 1622. Second, the Court indicated that in some circumstances "positive law or custom" may impose on the shipowner "a duty of supervisory inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations." 101 S.Ct. at 1624.

Both of these principles are directly applicable to the case at hand. In our initial opinion we held that the shipowner maintained control over the manner in which the gangway was to be secured. 622 F.2d 1168, 1172 (3d Cir. 1980). Relying on testimony by the plaintiff's expert, which was corroborated by the ship's captain and second officer, we also affirmed the trial court's finding that the evidence established a duty on the part of the shipowner to secure, maintain, and watch over the gangway. *Id.* at 1172. The source of this duty is the custom of "good seamanship" and the tradition of maritime law. The present case therefore comes within the circumstances delineated in *Scindia*, under which the shipowner may be found liable for injuries to longshoremen occurring during stevedoring operations. The vessel owner did not exercise due care with regard to the gangway area, which remained under the vessel's active control, *see* 101 S.Ct. at 1622; and, the custom of admiralty dictates that the shipowner had a continuing duty to watch over and inform itself about hazards involving the gangway and the manner in which it was fastened to the ship, *see* 101 S.Ct. at 1624. Although this duty to inspect and supervise may be shared with the stevedore by contract, according to the trial testimony the shipowner may not transfer the ultimate responsibility.

The vessel owner argues that *Scindia* hinged on a distinction between equipment owned by the vessel and items owned by the stevedore. The previously quoted language in the Supreme Court's opinion, which emphasizes control and duty, rather

than ownership, is at variance with the shipowner's interpretation of *Scindia*. Control over the defective condition remains a crucial factor in imposing liability. This conclusion is consistent with the policy underlying the Supreme Court's decision. The Court disparaged rules that would "result in holding the shipowner solely liable for conditions that are attributable to the stevedore." 101 S.Ct. at 1623. This result would come about when the owner has no control over a defective condition. When the owner retains a measure of control, however, a defect cannot fairly be attributed solely to the neglect of the stevedore. In the present case, for example, the jury found that both the stevedore and the owner had some control over the gangway and that both negligently breached their respective duties to monitor the way in which the gangway was attached to the ship.

Because our initial opinion in this matter correctly presaged the role the Supreme Court assigned in *Scindia* to control by the vessel owner over the area in question and to a customary duty to inspect, it remains viable. I therefore agree that the judgment for Sarauw must be reinstated.