Martin R. KENNEDY, Plaintiff,

v.

WEEKS MARINE, INC., Defendant.

No. CV 92–2814.

United States District Court, E.D. New York.

May 27, 1994.

Breen, Medina, Mielo & Kirk by Robert P. Kirk, Farmingdale, NY, for plaintiff.

Kalmus & Martuscello by Henry A. Martuscello, New York City, for defendant.

## ORDER

WEXLER, District Judge.

Martin R. Kennedy ("Kennedy" or "plaintiff") was hired by the American Bridge Company ("American Bridge") to work on sections of a bridge which were situated on a barge. American Bridge chartered the barge bare boat from Week's Marine, Inc. ("Week's" or "defendant"), the owner of the vessel. Kennedy was injured when he fell off a 20 foot long, 11 inch wide plank of wood which served as the barge's sole gangway and which was supplied by American Bridge. Plaintiff brought suit pursuant to 33 U.S.C. § 905(b). Magistrate Judge David F. Jordan granted defendant's motion for summary judgement on the ground that defendant had no duty to provide the barge with a safe gangway, inasmuch as American Bridge and Week's entered into a bare boat charter, and a gangway was not included as part of that agreement. Presently before the Court is plaintiff's appeal from that judgment. For the reasons stated below, the judgment below is affirmed.

## I. BACKGROUND

The facts of this case are not complicated. American Bridge entered into a bare boat charter with Week's Marine. Prior to consummating the deal, American Bridge had an independent consultant conduct an on hire survey report (the "survey"), the purpose of which was to determine the equipment on board and the condition of the vessel. The survey indicated that the barge was not supplied with a gangway.

Week's Marine knew that the barge in question would be used by American Bridge to rehabilitate a bridge. There is no evi-dence, however, suggesting that when Week's Marine entered into the charter agreement, it understood that workers would be required to work from the barge itself.[1] Kennedy argues, however, that subsequent to the charter, an issue of fact exists as to whether Week's Marine had actual knowledge that workers were working on the barge and that they were gaining access to the barge via the wooden planks. It seems that John Devlin ("Devlin"), a Week's Marine employee, had a personal friend who worked at the site. Devlin testified that he visited the site on at least one occasion, and in fact, may have viewed the site on a second occasion. Devlin further testified that he could not recall whether he saw workers board the barge via the wooden planks. Indeed, it is unclear from Devlin's testimony whether the work in question had even begun at the time of Devlin's visit.

Kennedy, an iron worker, was hired by American Bridge to help rehabilitate the bridge. Kennedy suffered personal injuries when he fell from the wooden planks acting as the gangway.

## II. DISCUSSION

This Court will review de novo Magistrate Judge Jordan's decision granting summary judgment in favor of Week's Marine. See Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39, 41 (2d Cir.1991). Accordingly, this Court will examine the record in the light most favorable to Kennedy, the non-moving party, mindful that Kennedy must demonstrate that there are genuine issues of material fact warranting reversal. Id.

It is undisputed that the parties entered into a bare boat charter. In a bare boat charter, the shipowner relinquishes and the charterer gains possession and control of the chartered vessel. Accordingly, a bare boat charterer is considered the owner of the vessel pro hac vice. See Reed v. Steamship Yaka, 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963). As such, the charterer is often saddled with the same liabilities that would be imposed on a shipowner. Id.

1. A barge can be used to transport cargo without a person ever having to set foot upon it.

■ Here, despite the fact that American Bridge was the owner *pro hac vice* at the time of injury, plaintiff would still have this Court find that Week's Marine owed plaintiff a duty to provide him with a suitable means to gain access to the barge. Week's Marine had the obligation to provide American Bridge with a safe and seaworthy vessel at the outset of the charter term. *See* 2B Benedict on Admiralty ¶ 51 n. 7 (6th ed. 1993) (citing cases). Only injuries caused by a pre-existing negligent condition can be charged to Week's Marine. *See Id.* at ¶ 51 n. 10 (citing cases).

In order for this Court to hold Week's Marine liable for Kennedy's injuries, the Court would have to find that in a bare boat charter situation, a shipowner's failure to equip a barge with a gangway is negligent *per se*. However, the mere fact that Week's Marine did not equip the chartered barge with a gangway is not negligent. As noted, there is no indication in the record that Week's Marine knew that American Bridge would have its employees work on the barge. Moreover, even if defendant did know that workers would need access to the barge, it was perfectly reasonable to assume that American Bridge would provide a suitable means of ingress and egress for its workers.[2]

■ Additionally, once the vessel was chartered to American Bridge, Week's Marine was divested of all control of the barge. Thus, even if Week's Marine was put on notice that American Bridge was employing and in most likelihood would continue to employ an unsafe gangway, it was not in any position to correct the situation. Accordingly, the cases relied on by Kennedy which suggest that a shipowner has the duty to correct unsafe conditions caused by stevedores in the course of unloading cargo are inapplicable.[3] *See Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 166–67, 101 S.Ct. 1614, 1621–22, 68 L.Ed.2d 1 (1981); *Tragni v. Establissement Maritime Camille,* 705 F.2d 92, 93 (2d Cir.1983); *Moore v. M.P. Howlett, Inc.,* 704 F.2d 39, 42 (2d Cir.1983); *Lieggi v. Maritime Co.,* 667 F.2d 324, 328 (2d Cir.1981).

In those cases, the shipowners retained control of their vessels while the stevedores were assigned the duty to unload the ships. As noted above, unlike those situations, the shipowner in this case did not continue to exercise control over its vessel. Accordingly, this Court finds that even if Week's Marine was aware of the unsafe condition and was further aware that American Barge would take no steps to correct the problem, Week's Marine still had no duty to step in and provide a safe gangway.[4] Because Week's

2. Kennedy relies on *Reyes v. Marine Enterprise Inc.,* 494 F.2d 866, 870 (1st Cir.1974), for the proposition that Week's Marine can be found negligent for failing to include a suitable gangway at the inception of the charter term. In *Reyes,* the plaintiff was injured when he fell off an unsafe gangway provided by his employer, a stevedore. The shipowner, in *Reyes,* remained in control of the vessel during the course of the stevedoring operations. The *Reyes* court stated that, "[b]ecause the means of ingress or egress, by whomever furnished, are an 'appurtenance' of the vessel, the owner has a duty of care regarding them. The owner is· thus liable for a negligent failure to inspect a gangway and to warn against defects reasonably apparent from inspection or to take steps to repair or replace it." *Id. Accord Sarauw v. Oceanic Navigation Corp.,* 655 F.2d 526, 528 (3rd Cir.1981).

There is nothing in the *Reyes* or *Sarauw* opinions that suggests that a shipowner can be found negligent merely for chartering a vessel without providing a gangway. To the contrary, neither the *Reyes* court nor the *Sarauw* court faulted the shipowner for failing itself to provide a gangway.

Rather, both courts found only that a shipowner, or one standing in the shoes of a shipowner for that matter, has a duty of care with respect to a vessel's gangway, no matter who provides the gangway. Thus, this Court reads both cases as imposing a duty of care on American Bridge, owner *pro hac vice* of the barge, to make sure that there was a suitable gangway.

3. In those situations, no general duty to oversee the stevedoring operations are imposed on shipowners. However, if the shipowners become aware that an unsafe condition exists, and it is apparent that the stevedore will not itself correct the situation, a duty is imposed on the shipowners to step in and fix any unsafe condition. *See Scindia,* 451 U.S. at 166–67, 101 S.Ct. at 1621–22.

4. American Bridge, as owner of the barge *pro hac vice,* may have had the duty, under *Scindia,* 451 U.S. at 166, 101 S.Ct. at 1621 and its progeny, to provide a safe gangway. Although Kennedy is prohibited by statute from suing American Bridge in its capacity as his employer, see 33 U.S.C. § 905(a), arguably he is not prohibited

Marine had no duty to replace the unsafe gangway, it cannot be found liable for any injuries caused by it. Consequently, the decision below granting summary judgment in favor of Week's Marine is affirmed.

## III. *CONCLUSION*

For the above-stated reasons, the order of Magistrate Judge David F. Jordan granting summary judgment in favor of Week's Marine is hereby affirmed.

SO ORDERED.

Zachary W. Carter, U.S. Atty., E.D.N.Y., Garden City, NY, by Asst. U.S. Atty., Mark O. Wasserman, for government.

Charles A. Urrego, pro se.

Gerald J. DiChiara, New York City by Gerald J. DiChiara, John J. DiChiara, for defendant.

from bringing a suit against American Bridge in its capacity as owner *pro hac vice. See Smith v. Eastern Seaboard Pile Driving Inc.,* 604 F.2d 789, 794 (2d Cir.1979) ("In order to determine whether a shipowner-employer may be held liable for damages, a court must decide if the negligence that caused the accident was 'owner occasioned.' ") (quoting *Lubrano v. Royal Netherlands*

*S.S. Co.,* 572 F.2d 364, 372 (2d Cir.1978) (Moore J., dissenting)); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 43–44 (3rd Cir.1975); *Gay v. Barge 266,* 915 F.2d 1007, 1012 (5th Cir.1990) (applying *Scindia* duties to employer/owner *pro hac vice* and allowing damage suit against that entity in its capacity as owner *pro hac vice* ).