56 F.3d 73
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Kenneth PEREZ, Plaintiff-Appellant,
v.
ZIM ISRAEL NAVIGATION COMPANY, LTD.; Zim America Israeli
Shipping Company, Inc., Defendants-Appellees.
 No. 93-56626.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1995.
Decided May 18, 1995.
 
 1
 Before: BEEZER and TROTT, Circuit Judges, and SHUBB, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Kenneth Perez, a longshore worker, appeals the district court's grant of summary judgment in favor of Zim Israel Navigation Company ("Zim Israel") in Perez's negligence action. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 4
 * Perez sustained injuries after tripping over lashing cables that had been placed on the M/V CALIFORNIA's main deck walkway by longshore workers. Perez brought an action against Zim Israel, the vessel owner, under section 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. Sec. 905(b), which provides an injured longshore worker with a cause of action against a vessel for its negligence. Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1268 (9th Cir. 1994). Perez argued that Zim Israel breached two of its five duties of care toward a stevedore working on a vessel, specifically the duty to intervene and the active control duty. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 170-78 (1981); Bjaranson v. Botelho Shipping Corp., 873 F.2d 1204, 1207 (9th Cir. 1989).
 
 
 5
 Zim Israel moved for summary judgment on the ground that no genuine issues of material fact existed and, as a matter of law, Perez had presented insufficient evidence to support the existence of either duty. The district court agreed, and granted summary judgment to Zim Israel. Perez appeals.[1]
 
 II
 
 6
 We review de novo the district court's grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).
 
 III
 
 7
 Perez first argues that the district court incorrectly determined that no genuine issues of material fact existed. We disagree. While Perez is correct that some of the facts are disputed, none of the disputes are material.
 
 
 8
 Perez argues that Uncontroverted Fact 2 misstates the allegations in his complaint by ignoring his theory that Zim Israel incurred a duty of care because it exercised active control over the main walkway. Zim Israel agreed in its response to Perez's opposition to summary judgment to modify that uncontroverted fact to more properly set forth Perez's allegations, specifically making reference to both theories of recovery. Although the district court's judgment does not reflect this amendment in its statement of uncontroverted facts, this appears to be an inadvertent oversight. The district court addressed the active control duty in its conclusions of law; thus, any dispute of fact is immaterial.
 
 
 9
 Perez also points to a purported dispute in Uncontroverted Fact 6, which states that Perez's accident occurred approximately fifteen minutes after the longshore workers placed the lashing cables on the deck. Perez argues that the cables were placed almost two hours before the accident. Even viewing this fact in the light most favorable to Perez, it is not material to the question of whether Zim Israel owed Perez a duty of care. The only material facts to that issue are who ordered and supervised the placement of the cables, and who was in control of the deck area. Those facts are undisputed.
 
 
 10
 Perez next argues that Uncontroverted Fact 8 is disputed. That fact states that "[t]he ship's crew were in no way involved in placing the cables on the deck (or any other cargo operations)." Perez argues that the longshore foreman's log indicated that the stevedores were to lash all containers "per mates [sic] orders." These two propositions do not amount to a dispute of fact. The mere fact that a member of the vessel's crew ordered containers to be lashed does not conflict with the fact that longshore workers controlled the placement of the wire lashing cables.
 
 
 11
 Finally, Zim Israel abandoned any reliance on Uncontroverted Fact 10, which provided that the crew of the vessel was forbidden from handling lashing cables while the vessel is in port, because that fact is unnecessary to uphold the summary judgment. We agree. Whether the vessel's crew was permitted to handle lashing cables while in port is disputed, but it does not help Perez's arguments regarding Zim Israel's duty of care.
 
 IV
 
 12
 Perez next argues that he provided sufficient evidence that Zim Israel was in active control of the main deck walkway, that it thus incurred a duty of care to remedy hazards to longshore workers, and that it breached this duty by failing to take action to remove or otherwise deal with the cables lying on the walkway. We disagree.
 
 
 13
 Although the vessel owner has no general duty to investigate and take action to remedy hazards that develop during cargo operations, the "active control" duty has been recognized by our court as part of a vessel's responsibility toward a longshore worker. Bjaranson, 873 F.2d at 1207. In Scindia Steam, the Supreme Court gave a brief explanation of this duty, observing that a vessel may be liable for its negligence toward a longshore worker if the vessel "fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas ... under the active control of the vessel during the stevedoring operation." 451 U.S. at 167.
 
 
 14
 We have addressed the necessary showing to establish "active control" by the vessel owner over a particular area of the vessel. In Bjaranson, 873 F.2d at 1209-10, a longshore worker who has injured near a cargo hatch brought an action against the vessel for negligence. The longshore worker argued that because cargo operations were ongoing only at two hatches, the vessel retained active control over a third hatch that was the scene of the accident. We stated that "[t]his, without more, is insufficient to establish the requisite control as contemplated by Scindia, which would require that the area be under the 'active' control of the defendant." Bjaranson, 873 F.2d at 1209. We added that the "record lacks any evidence that [the vessel owner] retained and exercised active control over the area in question." Id.
 
 
 15
 Here, Perez similarly fails to present sufficient evidence of the vessel's active control over the main deck walkway. Perez's only evidence is that the crew used the walkway to traverse the vessel. That is not enough. We have previously observed that "active control over the area or equipment utilized in the cargo operation is distinct from the casual use of the deck by the ship's crew for passage." Taylor v. Moram Agencies, 739 F.2d 1384, 1387 (9th Cir. 1984). If casual use was sufficient to impose a duty of care on the part of the vessel owner, it would effectively undermine the Supreme Court's holding in Scindia Steam that the vessel's crew does not have a continuing duty to inspect and investigate hazards that arise during cargo operations. The vessel owner obviously owns all parts of the vessel and its crew uses walkways, corridors, and even cargo holds while cargo operations are ongoing. In order to establish active control, and thus invoke a duty of care on the part of the vessel owner, a plaintiff is required to show more than casual use or ownership of parts of the vessel. The control must be active.
 
 
 16
 Again, Bjaranson is helpful. We noted that the only evidence of who exercised control over the hatch was that the longshore workers had placed a lid from one of the hatches where cargo operations were ongoing on top of the unused hatch that was the site of the accident. This action, we held, "disproves the theory that [the vessel owner] retained active control over the area of the [accident scene] hatch." 873 F.2d at 1209. Indeed, it was the longshore workers who were exercising active control over the hatch.
 
 
 17
 Similarly, the longshore workers here placed the wire lashing cables on the walkway. That action tends to disprove, at least in the absence of other evidence, the argument that the walkway was within the active control of Zim Israel. Instead, it weighs toward the conclusion that the walkway was under the active control of the longshore workers while they were completing their cargo operations. Perez's evidence is insufficient to give rise to a duty of care on the part of Zim Israel under the active control theory.
 
 
 18
 Perez argues that we should apply Davis v. Partenreederei M.S. Normannia, 657 F.2d 1048 (9th Cir. 1981). Davis is distinguishable. In that case, the longshore worker had presented evidence that crew members on the vessel had positioned a gangway in a dangerous way, and failed to reposition the gangway away from a cargo loading area. A longshore worker was injured. We concluded that there was sufficient evidence for a jury to find that the vessel maintained "concurrent control" over the gangway during cargo operations. Id. at 1052. Perez, conversely, presented no evidence that Zim Israel was responsible for placement of the lashing cables. Nor did Perez present evidence that the vessel retained concurrent control over the walkway during the cargo operations. For instance, there is no evidence of the vessel's crew cleaning the decks, doing repair work or conducting any crew operations on the deck.
 
 
 19
 Other gangway cases cited by Perez are similarly distinguishable. See, e.g., Sarauw v. Oceanic Navigation Corp., 655 F.2d 526 (3d Cir. 1981), cert. denied, 456 U.S. 914 (1982); Romero Reyes v. Marine Enters., Inc., 494 F.2d 866 (1st Cir. 1974). Unlike a gangway, a deck walkway is not subject to being positioned by the vessel owner. Thus, the holdings of the gangway cases that vessel owners were negligent in placing the gangways, or failing to reposition the gangways are inapposite.
 
 
 20
 The Court in Scindia Steam established a general proposition, subject to limited exceptions, that a vessel owner does not have a duty to supervise and inspect the vessel in order to "discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 172; Torres v. Johnson Lines, 932 F.2d 748, 751 (9th Cir. 1991). Perez presents insufficient evidence to meet any of the exceptions. We conclude that Zim Israel owed no duty of care to Perez requiring it to investigate the presence of the lashing cables lying on the deck or move the cables. Thus, the district court did not err in granting summary judgment.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At oral argument before this court, Perez conceded that he had insufficient evidence to support the existence of a duty to intervene. Thus, we will address only the active control duty