Sherri D. WHITE, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 94–2286.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1995.

Decided May 9, 1995.

**ARGUED:** Alan Patrick Owens, Norfolk, VA, for appellant. Timothy Ross Lord, Trial Atty., Admiralty Section, Civ. Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** Frank W. Hunger, Asst. Atty. Gen., Helen F. Fahey, U.S. Atty., David V. Hutchinson, Asst. Director, Admiralty Section, Civ. Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

Reversed and remanded by published opinion. Judge WILLIAMS wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.

## OPINION

WILLIAMS, Circuit Judge:

Appellant Sherri D. White appeals the dismissal of her suit for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. White asserts that the district court was properly vested with admiralty jurisdiction pursuant to 28 U.S.C. § 1333 (1988) and the Extension of Admiralty Jurisdiction Act, 46 U.S.C.App. § 740 (1988) (Extension Act). Specifically, White contends that she properly pled district court jurisdiction under § 1333 because the injury for which she seeks damages occurred within the navigable waters of the United States. White further contends that she perfected the jurisdiction of the district court under the Extension Act by submitting a Freedom of Information Act (FOIA) request to the captain of the USNS Henry J. Kaiser (Kaiser) prior to filing suit. The district court found that jurisdiction was proper only under the Extension Act, but because White had failed to file a claim as required by the Act, she was not entitled to bring suit. The court, therefore, dismissed White's claim for lack of subject matter jurisdiction. Because the district court erred in declining jurisdiction under traditional admiralty law, we reverse and remand for further proceedings.

### I.

When reviewing a district court's grant of a Rule 12(b)(1) motion to dismiss, we must assume the truth of the material facts as alleged in the complaint. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325, 111 S.Ct. 1842, 1844–45, 114 L.Ed.2d 366 (1991). On March 7, 1992, the USNS Henry J. Kaiser, a public vessel of the United States, was docked alongside a pier while undergoing repairs at the naval base in Norfolk, Virginia, pursuant to a contract between the United States Navy and Marine Hydraulics International, Inc. (MHI). White was a security guard employed by J & S Security, a subcontractor hired by MHI to provide security for the vessel. Later that day, pursuant to her employment as a security guard, White disembarked the vessel. Upon stepping onto a small wooden platform at the end of the gangway, she lost her balance, stumbled, and

ultimately collided face first with equipment stored near a building on the pier. White sustained numerous injuries including a fractured nose.

By letter dated March 15, 1993, White's attorney, Alan Owens, forwarded a FOIA request to the Captain of the Kaiser. In the letter, Owens requested "documents and records pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*" (J.A. 38.) Although Owens did not indicate any intention to file a claim based on White's accident, he did state:

> As attorney for Sherri D. White, a Security guard, who was injured aboard the USNS HENRY KAISER on March 7, 1992 while the vessel was docked at Norfolk, Virginia. [sic] I am requesting documents and records relating to her injury sustained aboard the vessel on that date. I am advised that she fell while descending the gangway because of the defective condition of the gangway.

*Id.* The request was forwarded to the Office of Counsel for the Military Sealift Command, Atlantic (MSC), which responded by letter dated March 29, 1993. This letter enclosed a copy of the handwritten ship's log entry describing the incident:

> 0011 Offgoing J & S security guard White, Sheri[sic] slipped on the bottom step of the gangway (wooden step) in the rain. She then continued to slip across the pier and finally hit her nose against the gangway ( [illegible] ) which is against the shed on the pier (ie: not the ship's gangway). The cut on her nose was about ½ inch across the crook.

(J.A. 43.) Other than the FOIA request and the MSC response, the record reflects no other correspondence prior to the filing of the complaint.

On February 2, 1994, White filed a complaint against the United States in federal district court to which the United States filed an answer on April 6, 1994. Shortly thereaf-

ter, the United States moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1). Following briefing on the jurisdictional questions, the district court dismissed White's case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). White timely appeals.

## II.

■ We review *de novo* the district court's dismissal of a complaint for failure to establish subject matter jurisdiction. *Ahmed v. United States,* 30 F.3d 514, 516 (4th Cir. 1994).

■ The authority of federal courts to hear cases in admiralty stems directly from the Constitution, which extends federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2; *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* — U.S. —, —, 115 S.Ct. 1043, 1047, 130 L.Ed.2d 1024 (1995). Congress has codified this power, vesting in the federal district courts original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1).

■ With respect to torts involving vessels, admiralty jurisdiction is confined to actions that satisfy conditions both of location and connection with maritime activity. *Grubart,* — U.S. at —, 115 S.Ct. at 1048; *Sisson v. Ruby,* 497 U.S. 358, 362, 110 S.Ct. 2892, 2895–96, 111 L.Ed.2d 292 (1990); *David Wright Charter Serv., Inc. v. Wright,* 925 F.2d 783, 784 (4th Cir.1991); *Foster v. Peddicord,* 826 F.2d 1370, 1374 (4th Cir. 1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988). Thus, as most recently articulated by the Supreme Court, to satisfy the location test, the tort must occur on navigable waters, or, if suffered on land, at least be caused by a vessel on navigable water. *Grubart,* — U.S. at —, 115 S.Ct. at 1048 (citing *Sisson,* 497 U.S. at 362, 110 S.Ct. at 2895).[1] Additionally, in order to

---

1. The second clause of this sentence reflects the incorporation by the Supreme Court of the Extension Act, 46 U.S.C.App. § 740. Although discussed together with traditional admiralty jurisdiction in *Grubart,* the Extension Act requires a plaintiff to submit written notice to the federal agency operating the vessel causing the injury or damages six months prior to filing suit against the United States. Claims arising from a "tort occur[ing] on navigable water" under traditional admiralty jurisdiction are not subject to this no-

meet the requisite connection test, the facts giving rise to the wrong must bear a sufficient connection to maritime activity. *Id.* This inquiry requires that the court first determine whether "the general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce," and second, "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (quoting *Sisson,* 497 U.S. at 365, 364 n. 2, 110 S.Ct. at 2897, 2896 n. 2) (quotation marks omitted). The district court did not reach the connection test, however, because it found no jurisdiction solely on the basis of its location analysis.

### III.

■ The first issue we confront is whether, applying the traditional locality test for admiralty tort jurisdiction, the district court properly dismissed White's complaint because her actual injury was not sustained on navigable waters. Urging affirmance of the district court's dismissal, the Government argues that White's injury occurred on the pier because she was injured only after she stepped onto the platform placed at the end of the gangway, lost her balance, and struck her nose on equipment stored on the pier. The pier, the government argues, is an extension of the land. Thus, the tort in the

instant case did not occur on navigable waters and fails the locality test. White, however, contends that the jurisdictional facts of this case are governed by the Supreme Court's decision in *The Admiral Peoples,* 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935).[2] In support of her position, White characterizes the instant appeal as another factual permutation of the many gangway cases we have considered since *Admiral Peoples,* both prior to and following the enactment of the Admiralty Extension Act of 1948. We agree.[3]

■ It is well established that traditional maritime law encompasses the gangway. *The Admiral Peoples,* 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633; *Russell v. City Ice & Fuel Co.,* 539 F.2d 1318, 1320 (4th Cir.1976); *Florida Fuels, Inc. v. Citgo Petroleum Corp.,* 6 F.3d 330, 332 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994); *Tullis v. Fidelity & Casualty Co.,* 397 F.2d 22 (5th Cir.1968); *O'Keeffe v. Atlantic Stevedoring Co.,* 354 F.2d 48, 50 (5th Cir.1965). In *The Admiral Peoples,* the Supreme Court confronted facts substantially identical to those in the instant case. There, a disembarking passenger was injured by falling from a gangplank leading from the vessel to the dock. 295 U.S. at 650, 55 S.Ct. at 886. The level of the plank at the shore end was about six inches above the

---

tice requirement. *Grubart,* —— U.S. at ——, 115 S.Ct. at 1048.

**2.** The district court, rather than looking to the rule of *Admiral Peoples* and its numerous progeny in both the Supreme Court and various circuit courts, relied on a footnote in a case from the Ninth Circuit Court of Appeals. (J.A. 48 (citing *Roberts v. United States,* 498 F.2d 520, 523 n. 3 (9th Cir), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974))). Aside from its lack of authority in this circuit, the facts of *Roberts* are clearly distinguishable from those before us today. *Roberts* was a wrongful death action arising from the crash of a cargo plane in navigable waters short of the runway at Naha Airbase, Okinawa. *Id.* at 522. Furthermore, the Ninth Circuit clearly limited its holding to defining "a 'maritime tort' in the aviation context," a recurring issue in admiralty jurisdiction but not a question before us today. *Id.* at 523.

**3.** Thus, we lay to rest any notion that the rule of *The Admiral Peoples* extending admiralty juris-

diction to the gangplank is no longer good law following the enactment of the Extension Act in 1949. *See Russell v. City Ice & Fuel Co.,* 539 F.2d 1318, 1320 & n. 2 (4th Cir.1976) ("[t]his warranty of means of ingress and egress includes a gangway by whomever owned or controlled when supplied for such a purpose"); *Gebhard v. S.S. Hawaiian Legislator,* 425 F.2d 1303, 1306 (9th Cir.1970) (admiralty tort jurisdiction traditionally "bounded by locality" now expanded by Extension Act); *Florida Fuels, Inc. v. Citgo Petroleum Corp.,* 6 F.3d 330, 332 (5th Cir.1993) (traditional maritime law encompasses the gangway), *cert. denied,* —— U.S. ——, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994); *Romero Reyes v. Marine Enters.,* 494 F.2d 866, 869–70 (1st Cir.1974) (shipowner's duty of care extends to gangway); *Tullis v. Fidelity & Casualty Co.,* 397 F.2d 22, 24 (5th Cir.1968) (citing *The Admiral Peoples* for the proposition that a "gangplank is considered a part of the ship so that injuries which occur thereon are within admiralty jurisdiction").

level of the dock, creating a step from which plaintiff fell, suffering serious injury. *Id.* at 650–51, 55 S.Ct. at 886. The only notable difference distinguishing our facts from those in *The Admiral Peoples* is the presence of a wooden platform to bridge the gap between the gangplank and the dock. This record reflects that upon stepping from the gangway to the wooden platform, White lost her balance and collided face first with equipment stored near a building on the pier.

█ Federal admiralty jurisdiction extends to the means of ingress and egress, including but not limited to the gangway of a vessel in navigable waters. *Russell*, 539 F.2d at 1320. As part of the means of ingress and egress, the platform upon which White stepped from the gangway to the dock falls within the navigable waters of the United States for the purpose of determining the location of the tort in question. *Id.* Furthermore, for jurisdictional purposes, we look to the place where the accident which ultimately gave rise to the cause of action was "initiated." *Whittington v. Sewer Const. Co.*, 541 F.2d 427, 432 (4th Cir.1976); *Higgins v. Leland*, 839 F.Supp. 374, 375 (D.S.C.1993). The mere fortuitous circumstance that White's injuries were suffered on the pier rather than on the gangplank platform does not remove the incident from navigable waters. *Cf. Whittington*, 541 F.2d at 432–33. Thus, the district court erred in determining that the events giving rise to White's injury did not satisfy the locality test.

## IV.

Because the district court found that White's injury did not satisfy the locality test, it failed to proceed to the next step and consider whether White satisfied the connection test as articulated by the Supreme Court in *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), and recently restated in *Grubart*, —— U.S. at ——, 115 S.Ct. at 1048. Given the jurisdictional facts in the record and the applicable *de novo* standard of review, *Ahmed*, 30 F.3d at 516, we now examine whether White has shown the requisite maritime connection.

## A.

█ The first issue we confront is whether the incident giving rise to this appeal has the potential to disrupt maritime commerce. *Grubart*, —— U.S. at ——, 115 S.Ct. at 1050. In characterizing the facts of this case, we must, like the Supreme Court in *Grubart*, describe the incident at an intermediate level of generality. *Id.* at ——, 115 S.Ct. at 1051. Thus, we look to the general features of White's mishap and inquire whether it falls "within a class of incidents that pose[ ] more than a fanciful risk to commercial shipping." *Id.* The facts reflect that the Kaiser, a public vessel of the United States, was docked alongside a pier at the naval base in Norfolk, Virginia, while undergoing repairs pursuant to a contract between the United States Navy and MHI. White, a security guard, disembarked the vessel and upon stepping onto a small wooden platform at the end of the gangway, lost her balance and collided with equipment stored near a building on the pier.

The general features of this incident may be described as injury to a person disembarking from a vessel in navigable water. Viewed in this light, it is apparent that an inability safely to avail oneself of the gangway and its appurtenances would greatly inhibit a variety of activities essential to commercial shipping, more specifically loading, resupply, and the coming and going of crew and contractors. Although these particular facts involved a guard contracted to secure the vessel during repairs, we believe that an unsafe means of egress poses a more than fanciful risk to a variety of activities essential to maritime commerce.

## B.

The second factor we must examine is "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, —— U.S. at ——, 115 S.Ct. at 1051. The Supreme Court has confronted the substantial relationship issue on several occasions. The court has held that swimming or crashing an airplane in navigable waters presented too attenuated a rela-

tionship to traditional maritime activity. *Executive Jet*, 409 U.S. at 258, 93 S.Ct. at 499. On the other hand, repair or maintenance work performed from a vessel on a navigable waterway, *Grubart*, —— U.S. at ——, 115 S.Ct. at 1051, navigation of noncommercial vessels within navigable waters, *Foremost Ins. Co v. Richardson*, 457 U.S. 668, 675, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982), and storage and maintenance of a vessel at a marina within navigable waters, *Sisson*, 497 U.S. at 366–67, 110 S.Ct. at 2898, each bear a substantial relationship to traditional maritime activity. *Grubart*, —— U.S. at ——, 115 S.Ct. at 1051. Although none of these cases involves providing security to vessels in port, the storage and repair of a vessel at a marina on navigable waters is "a common, if not indispensable, maritime activity." *See Sisson*, 497 U.S. at 367, 110 S.Ct. at 2898. Similarly, it is reasonable to conclude that the on-board security attending the storage and repair of a vessel in port is a common, if not indispensable, feature of maritime activity. Here, the Kaiser was docked alongside a pier at the naval base while undergoing repairs. White had been retained to guard the vessel while in port. Her presence on the Kaiser, while adding a novel factual component to the events giving rise to this appeal, does not diminish the substantial relationship established by the vessel's presence in port for repairs.

### C.

Given the importance of a safe means of ingress and egress for any vessel in port, the general features of White's gangway mishap have a potentially disruptive impact on maritime commerce. Furthermore, the general character of the security services provided to the ship during repairs demonstrates a substantial relationship to traditional maritime activity. We, therefore, conclude that White's guarding of the Kaiser during its repairs in port provides yet another example of conduct sufficiently connected to traditional maritime activity to confer jurisdiction on the federal courts.

**4.** Because we find that the district court was properly vested with jurisdiction under traditional admiralty principles, we need not determine whether the district court properly rejected Ex-

### V.

In conclusion, we find that the district court erroneously dismissed White's complaint for lack of subject matter jurisdiction. Furthermore, upon review of the record, we conclude as a matter of law that not only was the locality test for traditional admiralty jurisdiction satisfied, but the facts giving rise to the wrong bear a sufficient connection to maritime activity. Thus, the district court is properly vested with admiralty jurisdiction to reach the merits of White's claim. Accordingly, we reverse and remand for further proceedings consistent with this opinion.[4]

*REVERSED AND REMANDED.*

tension Act jurisdiction by finding that a FOIA request does not satisfy the notice requirement of the Extension Act.