**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEE JETER BROCK, Guardian Ad
Litem for Elizabeth H. Hardy, a
Minor; LEE JETER BROCK,
Individually,
Plaintiffs-Appellants,

v.                                                              No. 95-2302

FORREST RAY LEWIS; JAN LEWIS;
LUCY LEWIS,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CA-95-44-7-F)

Argued: March 7, 1996

Decided: May 24, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henry London Anderson, Jr., ANDERSON, COX &
ENNIS, Wrightsville Beach, North Carolina, for Appellants. John
Lloyd Coble, MARSHALL, WILLIAMS & GORHAM, Wilmington,

North Carolina, for Appellees. **ON BRIEF:** William Robert Cherry, Jr., MARSHALL, WILLIAMS & GORHAM, Wilmington, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Fourteen-year-old Elizabeth Hardy visited her friend Lucy Lewis at Lucy's parents' home situated on the Intracoastal Waterway in North Carolina. Elizabeth dove off a dock belonging to the Lewises and extending from a pier into the Waterway, which is undisputedly a maritime location. She had on numerous occasions before as a visitor to the Lewises' home made such dives. But this time, the depth of the water where Elizabeth dove was approximately one foot instead of the usual four feet, so she struck bottom and badly injured herself. Elizabeth and her mother, Lee Jeter Brock, sued the Lewises in federal district court. Diversity did not exist, but they asserted federal jurisdiction under 28 U.S.C. § 1333(1) by invoking Federal Rule of Civil Procedure 9(h) and labelling the matter an admiralty claim.[1]

Elizabeth had reached the Lewis home by way of a wave runner[2]

_____

[1] Perhaps Elizabeth and her mother wanted the case in federal court because, under North Carolina law, contributory negligence provides a complete defense to a suit claiming negligence. See Champs Convenience Stores, Inc. v. United Chemical Co., 406 S.E.2d 856, 861 (N.C. 1991). The shallowness of the water at the spot where Elizabeth dove presented a real likelihood of a finding of contributory negligence on her part. In admiralty, however, comparative negligence rather than contributory negligence applies. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408-09 (1953).

[2] The district court explained that "wave runner" is "a brand name for a personal watercraft, also commonly called a `jet ski.'"

2

which she secured to the dock. While she sunbathed, thirteen-year-old Lucy drove the wave runner in the Waterway. In response to Lucy's call to join her, Elizabeth made her unfortunate dive. The complaint alleged that Lucy and her parents were negligent: Lucy for inviting Elizabeth to dive into the water and climb aboard the wave runner, and the Lewises for failing to warn Elizabeth about the shallow water and to supervise or control their daughter.

Federal "admiralty and maritime jurisdiction" under Article III, Section 2 of the United States Constitution exists when conditions both of (1) location and (2) connection with maritime activity are met. Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co., ___ U.S. ___, 115 S. Ct. 1043, 1048 (1995). A plaintiff must show a potentially disruptive impact on maritime commerce as well as a substantial relationship to traditional maritime activity in order to satisfy the second criterion. Id. In the present matter, the district court properly summarized the applicable analysis:

> [T]he inquiry whether a tort has occurred within the admiralty jurisdiction requires the application of two tests-- the "locality" test and the "maritime nexus" or "connection" test, which itself calls for a two-pronged inquiry-- (i) what is [the] general character of activity giving rise to [the] incident and (ii) does it have a substantial relationship to traditional maritime activity.

The court then found that the requisite maritime connection was missing and granted the Lewises' motion to dismiss for lack of subject matter jurisdiction. Assuming the truth of the material facts alleged in the complaint as we must, we review the district court's dismissal de novo. White v. United States, 53 F.3d 43, 44-45 (4th Cir. 1995).

Because the locality test was clearly met by Elizabeth's injury in navigable waters, see Grubart, 115 S. Ct. at 1048 (stating that the tort must occur on navigable waters, or if suffered on land, be caused by a vessel on navigable water); White, 53 F.3d at 46-47 (applying the test), we turn our attention to the question of maritime nexus. Even assuming that the incident was one that had the potential to disrupt maritime commerce if it occurred during a time of high commercial traffic or in a heavily-traveled thoroughfare, see Grubart, 115 S. Ct.

3

at 1051 (describing the relevant inquiry as whether the general features of the mishap place it within a class of incidents that pose more than a fanciful risk to commercial shipping); see also Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675 (1982) (finding that even a collision between two pleasure boats on a small Louisiana river that saw little or no commercial traffic could potentially disrupt commercial activity), we cannot conclude that the event bears a substantial relationship to traditional maritime activity.

Elizabeth's dive into the water in order to swim, of itself, was not enough to create such a significant relationship. Grubart, 115 S. Ct. at 1051 (stating that the relationship between swimming and traditional maritime activity is "too attenuated" to compel admiralty rules). In ruling that admiralty jurisdiction did not extend to a claim brought by a pleasure boat guest who injured himself when he dove from the boat into navigable waters and struck the bottom, we concluded:

> Reduced to its essence, this case is about swimming and diving, and an unfortunate accident that resulted in the course of a recreational outing. . . . It is not about piloting, shipping, or navigational error, or other aspects of traditional maritime activity. There is simply no predicative relationship upon which an otherwise typical tort claim may properly be described as relating to "matters with which admiralty is basically concerned."

Foster v. Peddicord, 826 F.2d 1370, 1376 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). The same is true when the wave runner is regarded as a vessel and Lucy as its captain. Elizabeth was engaged in recreational diving and swimming. She was not injured in a collision with the wave runner, see Oliver by Oliver v. Hardesty, 745 F.2d 317, 320 (4th Cir. 1984) (finding admiralty jurisdiction exists over a claim arising from a collision between a swimmer and a pleasure boat because the claim rested on an allegation of negligent navigation of the boat), or an attempt to climb aboard it, see White, 53 F.3d at 48 (holding that admiralty jurisdiction extends to a claim of injury while disembarking a vessel docked in navigable waters). It stretches reality to believe that Elizabeth's plan to board the wave runner--assuming that was the purpose of her dive--was sufficient to create a substantial relationship to traditional maritime activity. See Grubart, 115 S.

Ct. at 1051 (explaining that the pertinent inquiry is whether the general character of the activity giving rise to the incident is so closely related to traditional maritime activity that it requires the application of admiralty rules).

The district court's dismissal for lack of subject matter jurisdiction is, accordingly,

AFFIRMED.

5