791 So.2d 135 (2001)
John THOMEY
v.
WEBER MARINE and Delta Bulk Terminal.
No. 01-CA-0153.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
Opinion on Rehearing August 22, 2001.
*137 Anthony J. Staines, Staines & Eppling, Metairie, LA, Counsel for Weber Marine and Delta Bulk Terminal, Defendant-Appellant.
Scott McQuaig, Collette C. Ranatza, Metairie, LA, Counsel for Stevedoring Services of America, Inc. d/b/a Delta Bulk Terminal.
Vincent DeSalvo, Baton Rouge, LA, Counsel for John Thomey, Plaintiff-Appellee.
George J. Nalley, Jr., Christopher J. Stahulak, George J. Nalley, Jr., APLC, Metairie, LA, Counsel for Cargill, Inc., Intervenor.
Panel composed of Judges DUFRESNE, CANNELLA and ROTHSCHILD.
ROTHSCHILD, Judge.
This is an appeal from a partial summary judgment granted by the trial court following a hearing on November 20, 2000. In its written judgment rendered on December 12, 2000, the trial court designated the judgment as final as there was no just reason for delay in compliance with La. C.C.P. art. 1915(B)(1). The sole issue presented for our review by this appeal is whether admiralty jurisdiction is applicable to the facts of the present case.

FACTS AND PROCEDURAL HISTORY
John Thomey, plaintiff herein, was employed by Cargill, Inc. as an operations supervisor and was assigned by his employer to work aboard Cargill's K-2 Mid-Stream transfer grain facility located in the Mississippi River. Cargill contracted with Weber Marine, Inc. to provide transportation to its employees to the Cargill facility. In connection therewith, Weber Marine provided a spud barge, the PORT ALLEN, which was moored by spuds into the Mississippi River bottom as a means of access to the river. The barge was equipped with a small office from which Weber Marine conducted its crewboat operations, as well as a gangway and several makeshift extensions to the gangway which were used to board the barge from the adjacent landing area. Weber Marine also provided two crewboats to transport Cargill employees from the PORT ALLEN to the mid-stream transfer facility.
On March 8, 1997, at approximately 10:30 p.m., plaintiff arrived at the landing area, parked his vehicle and attempted to board the PORT ALLEN to report for work. At this time, the landing area was covered with approximately 30 feet of ankle to knee-deep water due to the seasonal rise in the river's water level. As a result of these conditions, three wooden pallets and an 6-foot board had been placed in the water to allow dry access to the barge's gangway. The accident herein occurred when plaintiff slipped and fell as he attempted to step onto one of the wooden pallets.
As a result of injuries sustained, plaintiff subsequently filed the present suit for damages invoking admiralty jurisdiction pursuant to the savings to suitors clause, 28 U.S.C. section 1333. Named as defendants were Weber Marine, Inc. and Stevedoring Services of America, d/b/a Delta Bulk Terminal (hereinafter "Delta Bulk"), the owner of the landing area where the accident occurred. Plaintiff alleged that defendants were negligent in failing to provide a safe means of access from the landing area to the PORT ALLEN and in failing to move the PORT ALLEN to a safer location for boarding. Cargill, Inc. intervened in the suit to recover compensation benefits paid to plaintiff as a result of this incident.
Defendants filed responsive pleadings, and on September 6, 2000, Delta Bulk filed *138 a motion for jury trial. On September 11, 2000, Weber Marine filed a motion for partial summary judgment arguing that there was no basis for admiralty jurisdiction in this matter. Plaintiff also filed a motion for partial summary judgment on the basis that admiralty jurisdiction was applicable in this matter. These matters were heard by the trial court on November 20, 2000. The trial court concluded as a matter of law that the accident in this case occurred on navigable waters as it occurred on a makeshift gangway, and thus admiralty jurisdiction applied. By judgment rendered on December 12, 2000, the trial court granted plaintiff's motion and denied Weber Marine's motion for partial summary judgment. The trial court also denied Delta Bulk's motion for trial by jury.
Weber Marine and Delta Bulk now appeal from this judgment, arguing that the trial court erred in finding admiralty jurisdiction to be applicable under the facts of this case. Delta Bulk also argues that the trial court erred in denying its motion for jury trial. For the reasons stated herein, we find no merit in appellants' arguments, and we therefore affirm the judgment of the district court.

APPLICABLE LAW
We review de novo the trial court's granting of summary judgment. Sawicki v. K/S Stavanger Prince, 99-1459 (La.App. 4 Cir. 12/27/00), 778 So.2d 620. Summary judgment shall be rendered if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B). A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case. La. C.C.P. art. 966(E).
Plaintiff asserts jurisdiction in this case under general maritime law pursuant to the savings to suitors clause. The United States Constitution grants to federal district courts jurisdiction in all "cases of admiralty and maritime jurisdiction." U.S. Const. Art. III, section 2. State courts, however, have concurrent jurisdiction by virtue of the "savings to suitors" clause of the Judiciary Act of 1789. 28 U.S.C.A. section 1333.
The traditional test for admiralty tort jurisdiction was based solely on whether the tort occurred on navigable waters. However, jurisdiction was subsequently extended to injuries caused by a vessel which were consummated on land by the Admiralty Extension Act of 1948, 46 U.S.C. section 740. Further, the limits of admiralty jurisdiction have been further established by the United States Supreme Court in a trilogy of cases. In Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), a case involving an airplane crash into navigable waters, the Court provided a two part test for maritime tort jurisdiction known as the "locality plus nexus" test, which provides that for a tort to fall under admiralty jurisdiction of the court, it must occur on or over navigable waters and the tort must "bear a significant relationship to traditional maritime activity." Id. 93 S.Ct. at 504.
In the second case, the Supreme Court extended the application of Executive Jet beyond the aviation context in Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), a case involving a collision between two pleasure boats. The Court added to the nexus analysis that the maritime activity need not be exclusively commercial to establish *139 jurisdiction as long as it had the potential to impact commerce.
The Supreme Court elaborated on both requirements of admiralty jurisdiction in the most recent of the trilogy, Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), a case involving a fire aboard a pleasure boat which spread to other boats and the nearby marina. With regard to the locality analysis, the Supreme Court held that admiralty jurisdiction is present when the tort occurs on land, provided that the tort is at least caused by a vessel on navigable waters. Further, in order to meet the connexity test, the facts giving rise to the wrong must bear a sufficient connection to maritime activity. Id., 110 S.Ct. at 2897. This inquiry requires the Court to determine whether "the general features of the type of incident involved" have a "potentially disruptive impact on maritime commerce," and secondly, "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id., 497 U.S. 358, 110 S.Ct. at 2896, 2897.
Finally, in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Supreme Court further elaborated on the second nexus question provided in Sisson, stating that when assessing the general character of the incident it should be "within a class of incidents that posed more than a fanciful risk to commercial shipping." 115 S.Ct. at 1051. The facts in Grubart involved a claim against both a maritime defendant and a land-based defendant for negligent activity which occurred on navigable waters. The Court concluded, after applying the Sisson analysis, that both defendants were subject to admiralty jurisdiction.
In the present case, appellants contend that neither of the requirements established by the Supreme Court in the trilogy of cases to confer admiralty jurisdiction have been met. Appellants argue that plaintiffs incident occurred on land rather than on navigable waters, and further that the fall was not caused by a vessel but rather was caused by land-based equipment or negligence. Appellants also contend that this incident has no connection to traditional maritime activity. We will address each of these requirements pursuant to the applicable jurisprudence.

Locality
Appellants contend that plaintiffs accident occurred in a parking lot that was partially submerged by a puddle of river water, and not on navigable waters. Further, appellants argue that plaintiff's landbased accident was not caused by a vessel so as to confer admiralty jurisdiction.
In its reasons for judgment, the trial court found that the accident occurred on the makeshift gangway provided as access to the crewboats, and thus the locality test was met. In reaching this conclusion, the trial court made no determination as to whether the PORT ALLEN itself was considered to be a vessel. Rather, the trial court based its ruling on its finding that the accident occurred on the makeshift gangway necessary to access the crewboats, which were indisputably vessels. The court concluded therefore that the accident occurred on navigable waters and that admiralty jurisdiction applies.
It is well-established that traditional maritime law encompasses the gangway. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). Further, federal admiralty jurisdiction extends to the means of ingress and egress, including but not limited to the gangway of a vessel in navigable waters. Russell v. City Ice & Fuel Co. of Point Pleasant, 539 F.2d 1318, 1320 (4th Cir.1976).
*140 Although appellants argue that the PORT ALLEN is not a vessel, we find that both the gangway and the PORT ALEN were plaintiffs only means of ingress and egress from the shore to the crewboats moored to the PORT ALLEN. The PORT ALLEN was not moored immediately adjacent to the shoreline; rather, a gangway was necessary to bridge the gap between the barge and the shore. The established means of accessing the crewboats was through the gangway and the PORT ALLEN.
Under these circumstances, we agree with the trial court that it was unnecessary to make a determination as to whether the PORT ALLEN was a vessel. Rather, the issue to be resolved is whether the wooden pallets upon which plaintiff fell can be considered extensions to the gangway to the barge which ultimately accessed the crewboats in the Mississippi River.
Although there is no evidence showing who placed the pallets in the water, the law is well established that an owner of a vessel is responsible for the means of ingress and egress to the vessel. Russell v. City Ice & Fuel Co. of Point Pleasant, supra. Weber Marine concedes this duty in brief to this Court. However, Weber Marine argues that this duty does not extend indefinitely, and that this accident, which occurred as a result of trash or debris in the parking lot, does not fall within such a duty. Weber Marine further contends that the PORT ALLEN's gangway was in working order at the time of plaintiffs accident, and that the accident was not caused by a defect in the gangway. We disagree.
At the time of plaintiffs accident, the waters of the Mississippi River had begun their seasonal rise, and river water covered over 30 feet of the parking lot. Evidence in the record indicates that the depth of the water at the time of the accident ranged from 6 to 12 inches. Weber Marine was aware of the impending rise in the river's water level, and evidence in the record indicates that the gangway had been extended by wooden pallets and other objects in previous years. Although the wooden pallets were not physically connected to the gangway, evidence in the record indicates that they abutted the permanent gangway provided by Weber Marine and at times were tacked to each other. As such, the pallets served as a makeshift means of ingress and egress to the PORT ALLEN due to the fact that the permanent metal gangway provided by Weber Marine did not meet the water's edge at the time of the accident. Deposition testimony contained in the record shows that many employees routinely used wooden pallets to access the gangway when the water level was high. Under these circumstances, we find that the pallets were part of the access to the landing barge and vessels, and they were not merely trash or debris in the parking lot.
The record also establishes that the permanent gangway provided by Weber Marine to access the PORT ALLEN was rendered too short by the rising water. Although Weber Marine's usual course of action was to move the barge to another location, no such action was taken in this case. We find that by failing to provide a safe means of ingress to its vessels, Weber Marine failed to discharge its duty to the passengers of the vessels. Passengers attempting to board the barge and ultimately the crewboats were required to use the makeshift extension to reach the gangway in order to avoid traversing the river water. Thus, we reject appellants' argument that the wooden pallets were not part of the gangway necessary to reach the crewboats.
We likewise find no merit in appellants' claims that Weber Marine provided *141 an alternate means of ingress to the vessel when the parking lot was submerged with water. Although Weber Marine contends that plaintiff could have used the nearby Convent Marine dock and radioed a crewboat to pick him up and transfer him to the PORT ALLEN, the record does not support this argument. The deposition testimony contained in the record fails to show that this was an established alternate means of accessing the crewboats which was available to the Cargill employees.[1]
In fact, the evidence establishes that the Convent Marine dock was used when the PORT ALLEN was moved to that location due to the rising water. However, this was not done in the present case, and there was no established procedure of radioing a crewboat to pick up a passenger when the barge was not docked at that location. Based on our review of the record, we agree with the finding of the trial court that Weber Marine failed to provide evidence that plaintiff or other Cargill employees were aware of an alternate means of ingress, or that the Convent Marine dock was used as an alternate means of accessing the PORT ALLEN and the crewboats when the water was high.
Further, although Delta Bulk argues that it does not exercise any control over the PORT ALLEN, its gangways or extensions, such a duty on the part of this defendant is not necessary to confer admiralty jurisdiction on plaintiffs claim. Delta Bulk argues that as owner of the parking lot, it has no duty to provide safe ingress and egress that is imposed on vessel owners. Delta Bulk thus argues that admiralty jurisdiction should not apply to plaintiffs claims against it, and the claims of Weber Marine, the vessel owner, should be bifurcated. However, this argument was specifically rejected by the Supreme Court in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock, supra, 513 U.S. 527, 115 S.Ct. 1043, 1054, 130 L.Ed.2d 1024 (1995), wherein the court stated, Ait is not apparent why the need for admiralty jurisdiction in aid of maritime commerce somehow becomes less acute merely because land-based parties happen to be involved." Relying on the provisions of the Admiralty Extension Act, the court determined that a land-based victim may properly be subject to admiralty jurisdiction. Id. We therefore find no merit in Delta Bulk's argument that plaintiff's claims against the two defendants must be tried separately.

Maritime Connection
We turn next to the second requirement necessary to confer admiralty jurisdiction: connexity to maritime commerce. This is actually a two-part question: 1)whether the incident has a potentially disruptive impact on maritime commerce, and 2) whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Sisson v. Ruby, supra, 110 S.Ct. at 2896, 2897.
Applying this analysis, we conclude that a sufficient maritime connection is present in the instant case. Plaintiff in this case sustained an injury while attempting to board a crewboat located in the Mississippi River. There is no dispute that the crewboat constitutes a vessel in navigable waters. At the time of the accident, plaintiff was employed as a maritime worker loading and unloading grain barges and ships on a mid-stream grain transfer facility. This accident, although it occurred *142 on the shore side of the navigable waterway, substantially impacts an activity essential to commercial shipping, i.e., the loading and unloading of vessels in commerce. The Weber Marine crewboats transport a variety of employees to various commercial facilities on the river, including the Cargill K-2 facility. The failure to provide a safe means of ingress and egress exposes employees to injury prior to arriving at the facility and can impact shift changes and prevent employees from arriving at work. The safe transportation by water and the safe loading and unloading of passengers who work on the river are essential to the facilities located there and have a strong potential to disrupt maritime commerce. Moreover, the general character of the activity involved here, i.e., the transportation of river workers from shore to ship, is inherently maritime and "bears a substantial relationship to traditional maritime activity" of loading and unloading ships and transporting passengers for hire over water. Under the circumstances presented here, we conclude that the second requirement of a maritime connection has been satisfied in this case.
The facts in this case are similar to the case are similar to the case of White v. U.S., 53 F.3d 43 (4th Cir.1995) which was relied on by plaintiff and cited by the trial court in its reasons for judgment. In that case, the court relied on The Admiral Peoples, supra, and found that a small wooden platform which plaintiff stepped on while disembarking a vessel was part of the gangway and thus plaintiff's accident occurred on navigable waters. Further, the court stated:
[I]t is apparent that an inability safely to avail oneself of the gangway and its appurtenances would greatly inhibit a variety of activities essential to commercial shipping, more specifically loading, resupply, and the coming and going of crew and contractors.
Likewise, we agree with the trial judge that the pallet on which plaintiff fell in this case was an extension of the gangway to the vessel, and thus the accident falls within the locality test enunciated by federal jurisprudence. Further, we find that the incident is sufficiently connected to traditional maritime activity and has a potentially disruptive impact on maritime commerce to confer admiralty jurisdiction on plaintiffs claims. Under these circumstances, Delta Bulk is prohibited from obtaining a trial by jury on the basis of the savings to suitors clause and La. C.C.P. art. 1732(6).[2]

CONCLUSION
Accordingly, for the reasons assigned herein, we conclude that both requirements necessary to confer admiralty jurisdiction have been satisfied in this case. The partial summary judgment was properly granted by the trial court in favor of plaintiff. Moreover, we find no error in the trial court's ruling denying Delta Bulk's motion for trial by jury. The judgment of the trial court is hereby affirmed. Appellants shall bear all costs of this appeal.
AFFIRMED.
Before ROTHSCHILD, DUFRESNE, and CANNELLA, JJ.

ON MOTION FOR REHEARING
REHEARING GRANTED FOR THE LIMITED PURPOSE OF CLARIFICATION:
The opinion in this case is limited to jurisdictional issues raised on appeal. *143 Nothing in the opinion should be construed as a determination of the merits of plaintiff's negligence action.
NOTES
[1] One witness, a long-time Cargill employee, testified by deposition that he believed that if he would have radioed a crewboat from the Convent Marine dock, the crewboat operators would have "laughed him out."
[2] At the time plaintiff's cause of action arose, La. C.C.P. art. 1732 provided that a jury trial was not available where plaintiff designated as an admiralty claim a suit brought under the savings to suitors clause.