Sheila MAHONY, Charles Riggs, and Ace American Insurance Co.,
Plaintiffs,

v.

**LOWCOUNTRY BOATWORKS, LLC**
d/b/a Hilton Head Boathouse,
Defendant.

C.A. No.: 9:06–02150–PMD.

United States District Court,
D. South Carolina,
Beaufort Division.

Nov. 21, 2006.

John Rhett Crosswell Bowen, Laughlin and Bowen, Hilton Head Island, SC, for Plaintiffs.

Russell Grainger Hines, Stephen L. Brown, Young Clement Rivers and Tisdale, Charleston, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant Lowcountry Boatworks, LLC d/b/a Hilton Head Boathouse's ("Defendant" or "Marina") motion to dismiss. For the reasons set forth herein, the court denies Defendant's motion.

## BACKGROUND

Defendant is a maritime service contractor and marine service provider in Beaufort County, South Carolina. Defendant's operations include a marine repair facility for the repair of vessels and machinery; a launching and commissioning operation whereby Defendant removes vessels from their transport and places them into the water; a covered storage facility for both vessels and equipment; berthing facilities for certain commercial vessels; a parts department; and a sales and brokerage division for the sale of certain new and used vessels.

Plaintiffs Shelia Mahony and Charles Riggs (herein collectively referred to as "Mahony") own the M/V *Essency* (the "Vessel"). On or about October 23, 2004, the Vessel was delivered to Defendant by truck. Pursuant to an agreement between Mahony and Defendant, Defendant was to remove the Vessel from the truck and launch it into the waters contiguous to the Intracoastal Waterway. Defendant launched the Vessel without servicing or inspecting it, and the Vessel became partially submerged and thereby suffered damage. Plaintiffs allege the damage was caused by Defendant's "gross negligence . . . in failing to inspect the Vessel prior to launching, in failing to install the drain plug prior to placing the Vessel into the water, and by failing to properly supervise its agents and employees in the proper procedures employed in launching the Vessel following removal from its transport." (Complaint ¶ 9.) Plaintiffs filed suit on July 28, 2006, asserting causes of action for negligence and breach of warranty of workmanlike performance. On September 29, 2006, Defendant filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting this court does not have subject matter jurisdiction.

## STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6)

consideration." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

## *ANALYSIS*

Pursuant to the United States Constitution, a federal court has the authority to hear cases in admiralty: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ... to all Cases of admiralty and maritime Jurisdiction...." U.S. CONST. art III, § 2, cl. 1. Congress embodied this power in 28 U.S.C. § 1331(1): "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Plaintiffs filed suit for negligence and breach of warranty of workmanlike performance, asserting this court has jurisdiction over both claims pursuant to 28 U.S.C. § 1333. Defendant asserts, however, that this court does not have jurisdiction over Plaintiffs' tort claim "because none of the negligent acts/omissions allegedly committed by [Defendant] with regard to preparing the vessel for launch occurred on navigable water and [because] the wrong alleged by Plaintiffs bears no significant relationship to traditional maritime activity." (Defendant's Motion at 2.) Defendant also asserts this court does not have jurisdiction over Plaintiffs' contract claim "because the subject matter of the contract is not maritime." (Defendant's Motion at 3.)

## A. Plaintiffs' Contract Claim

In *Insurance Co. v. Dunham,* 78 U.S. 1, 11 Wall. 1, 20 L.Ed. 90 (1870), the Supreme Court explained that "the true criterion [for admiralty jurisdiction in contract claims] is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions." *Dunham,* 78 U.S. at 16, 11 Wall. 1. The Court further states, "Perhaps the best criterion of the maritime character of a contract is the system of law from which it arises and by which it is governed." *Id.* at 18, 11 Wall. 1.

A contract is maritime if it relates "to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *J.A.R., Inc. v. M/V Lady Lucille,* 963 F.2d 96, 98 (5th Cir.1992) (internal quotation marks omitted); *see also Commercial Union Ins. Co. v. Detyens Shipyard, Inc.,* 147 F.Supp.2d 413, 419 (D.S.C.2001). It is widely accepted that contracts to repair vessels are subject to the court's admiralty jurisdiction. *See New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 99, 42 S.Ct. 243, 66 L.Ed. 482 (1922) ("It is not always easy to determine what constitutes repairs as opposed to original construction. A contract for the former is maritime; if for the latter, it is not."); *see also David Wright Charter Serv. of N.C., Inc. v. Wright,* 925 F.2d 783, 784 (4th Cir.1991) ("A contract between a vessel owner and a repair facility for work on a vessel that has not been withdrawn from navigation is within admiralty jurisdiction."). "Moreover, courts have gone on to hold that maritime contracts to be performed on land can be within the admiralty jurisdiction of the court." *AXA Re Prop. & Cas. Inc. Co. v. Tailwalker Marine, Inc.,* No. C.A. 2:04–1684–23, 2004 WL 3680276, at *2 (D.S.C. Dec. 17, 2004) (cit-

ing *American E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123 (5th Cir.1979)). In *Tailwalker Marine*, this court said, " '[C]ontracts to repair and store vessels fall within the Court's admiralty jurisdiction, whether the vessels are kept on land or in the water. The key to jurisdiction is not the location of the vessel, but whether the contract sought to be enforced impacts maritime commerce.' " *Tailwalker Marine*, 2004 WL 3680276, at *3 (quoting *Commercial Union Ins. Co. v. Used Boat Haven*, No. 94 CIV. 0448(JFK), 1996 WL 191960 (S.D.N.Y. Apr. 22, 1996)).

■ Defendant contends this court does not have jurisdiction over the contract claim because the subject matter of the contract is not maritime. Defendant states that Plaintiffs' memorandum "alleges the contract at issue was to 'commission and launch the vessel.' Accordingly, the contract involved the provision of services that were completed at the time the vessel was in the water." (Defendant's Reply at 5.) Because the contract between Mahony and Defendant was for the Defendant to launch the Vessel, if Defendant contends that all services under the contract were completed before the Vessel was in the water, this contention is without merit. It is difficult to imagine that Defendant could complete a contract to launch a vessel before actually placing it in the water. Furthermore, a contract to store a vessel is a maritime contract. *See American E. Dev. Corp.*, 608 F.2d at 124–25; *see also Tailwalker Marine*, 2004 WL 3680276, at *2. If a contract to store a vessel is a maritime contract, a contract to launch a vessel is likewise a maritime contract. Defendant is correct in asserting that "not all contracts concerning vessels are necessarily maritime contracts, such that they trigger admiralty jurisdiction." (Defendant's Reply at 4 (citing *Doolittle v. Knobeloch*, 39 F. 40, 41 (D.S.C.1889)).) However, this court finds that a contract to launch a vessel is a maritime contract because it

"relates to a vessel in its use as such." BLACK'S LAW DICTIONARY 346 (8th ed.2004).

## B. Plaintiffs' Tort Claim

"The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters. If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531–32, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). This traditional test has been modified, however, by several opinions from the United States Supreme Court. In *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Court held that unless the "wrong bear[s] a significant relationship to traditional maritime activity, ... claims arising from airplane accidents are not cognizable in admiralty." *Id.* at 268, 93 S.Ct. 493. Ten years later, in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Court found admiralty jurisdiction to exist in tort claims resulting from the collision of two pleasure boats in navigable waters. *Id.* at 677, 102 S.Ct. 2654. The *Foremost* Court noted, however, "that the *Executive Jet* requirement that the wrong have a significant connection with traditional maritime activity is not limited to the aviation context." *Id.* at 674. The Court found such a connection in that case: "The potential disruptive impact of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation, compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce." *Id.* at 674, 102 S.Ct. 2654.

The final case is *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). In *Sisson*, "a fire ... began on a

noncommercial vessel at a marina located on a navigable waterway." *Id.* at 362, 110 S.Ct. 2892. The Court first stated, "Certainly, such a fire has a potentially disruptive impact on maritime commerce, as it can spread to nearby commercial vessels or make the marina inaccessible to such vessels." *Id.* The Court then inquired into whether a "substantial relationship [existed] between the activity giving rise to the incident and traditional maritime activity." *Id.* at 364, 110 S.Ct. 2892. In finding such a relationship, the Court stated,

Clearly, the storage and maintenance of a vessel at a marina on navigable waters is substantially related to "traditional maritime activity" given the broad perspective demanded by the second aspect of the [*Foremost*] test. Docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity. At such a marina, vessels are stored for an extended period, docked to obtain fuel or supplies, and moved into and out of navigation. Indeed, most maritime voyages begin and end with the docking of the craft at a marina. We therefore conclude that, just as navigation, storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity.

*Id.* at 367, 110 S.Ct. 2892.

The Supreme Court summarized the effect of this case law in *Jerome B. Grubart,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024. The Court said,

After *Sisson,* then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connec-

tion test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce.

Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Jerome B. Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (internal quotation marks and citations omitted).

**1. The Location Test**

Defendant asserts this court does not have jurisdiction over Plaintiffs' tort claim "because none of the negligent acts/omissions allegedly committed by [Defendant] with regard to preparing the vessel for launch occurred on navigable water." (Defendant's Motion at 2.) Defendant thus argues this court does not have jurisdiction over Plaintiffs' negligence claim because "[t]he negligent acts alleged in the present case did not occur on navigable water ..." (Defendant's Motion at 3.) Defendant specifically points to Plaintiffs' complaint, which alleges that damage to the Vessel was caused by Defendant's "gross negligence ... in failing to inspect the Vessel **prior** to launching, in failing to install the drain plug **prior** to placing the Vessel into the water, and by failing to properly supervise its agents and employees in the proper procedures employed in launching the Vessel **following removal from its transport.**" (Complaint ¶ 9 (emphasis added).) Although Defendant reads this allegation to allege that *none* of its negligent acts occurred on navigable water, this court does not agree with Defendant's interpretation. Plaintiffs alleged that Defendant was negligent following the Vessel's removal from its transport; Plaintiffs did not allege that all negligence occurred

following the removal of the Vessel from its transport but prior to when it was placed in the water.

In *Higgins v. Leland*, 839 F.Supp. 374 (D.S.C.1993), Judge Blatt was faced with the issue of whether a defendant's negligence in failing to properly maintain a dock implicated the court's admiralty jurisdiction. The plaintiff in that case stepped on a damaged board on the defendant's dock and thereby fell onto a boat moored at the dock. *Id.* at 374. The plaintiff argued admiralty jurisdiction was appropriate, asserting "a tort is deemed to occur not where the wrongful act or omission had its inception, but at the place where it became operative, i.e., the place of injury." *Id.* at 375. However, Judge Blatt disagreed and found admiralty jurisdiction lacking:

> Here, it is clear from the plaintiff's claim that the alleged tort is the defendant's negligence in failing to maintain the dock in a reasonably safe condition.... Since the plaintiff's focus is on the injuries he sustained when he fell into the boat, he also asserts that this court look not to the wrongful act or omission at its inception, but at the place where ... it became operative. However, the Fourth Circuit has indicated that for jurisdictional purposes, "we must look to the place where the incident occurred which ultimately gave rise to the cause of action." *Whittington v. Sewer Construction Co., Inc.*, 541 F.2d 427, 432–33 (4th Cir.1976).... The fact that the plaintiff may have wound up in the water or in a boat below the dock,

does not, standing alone, transform this land-based injury into a maritime injury. *Id.* at 375–76.

■ Using the jurisdictional test from *Whittington*,[1] this court finds that the tort occurred on navigable water.[2] Plaintiffs alleged Defendant failed to inspect the Vessel prior to launching, failed to install the drain plug prior to placing the Vessel in the water, and failed to properly supervise its agents in launching the Vessel. Had Defendant never placed the Vessel in the water, no injury would have occurred. Here, the incident which ultimately gave rise to the cause of action was placing the Vessel in the water without the garboard[3] and other drain plugs in place. Furthermore, unlike in *Higgins v. Leland*, no land-based injury occurred in this case. This court thus determines that the location test is satisfied because the incident occurred on navigable water.

## 2. The Connection Test

■ To satisfy the connection test, the court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." *Jerome B. Grubart*, 513 U.S. at 534, 115 S.Ct. 1043 (internal quotation marks and citations omitted). Then the court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal quotation marks and citations omitted). Defendant argues Plaintiffs can-

---

1. *Whittington* has been abrogated on other grounds. *See Stephenson v. McLean Contracting Co.*, 977 F.2d 574, 1992 WL 266860, *1 (4th Cir.1992) (unpublished table decision).

2. *See also* 2 C.J.S. *Admiralty* § 73 (2006) ("Admiralty jurisdiction extends to an injury originating on nonnavigable water or on land and consummated on navigable water.").

3. Garboard is defined as "the plank or planking in a wooden ship and the plate or plating in a steel ship lying next to the keel." Webster's Third New International Dictionary 935 (1976).

not satisfy either prong of the connection test. Defendant asserts that the " 'general features' of this case present no potential for disruption to maritime commerce," (Defendant's Reply at 3), and that the "wrong alleged by Plaintiffs bears no significant relationship to traditional maritime activity." (Defendant's Motion at 2.)

### a. Potential for Disruption to Maritime Commerce

In determining whether the general features of a case present a potential for disruption to maritime commerce, the question is "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Jerome B. Grubart*, 513 U.S. at 539, 115 S.Ct. 1043. Defendant characterizes the general features of this case as "simply a vessel docked at a marina on navigable water." (Defendant's Reply at 4.) Defendants further state that whether a vessel is partially submerged or floating normally, "such a vessel poses no potential disruption to maritime commerce." (Defendant's Reply at 4.) This court, however, disagrees with Defendant's assessment of the general features of this case. In the court's view, the general features of this incident may be described as damage to a vessel caused by the vessel being negligently launched into navigable water. *See generally White v. United States*, 53 F.3d 43, 47 (4th Cir.1995) (describing the general features of the incident as "injury to a person disembarking from a vessel in navigable water" when a security guard, disembarking the vessel, stepped onto a small platform at the end of the gangway, lost her balance, and collided with equipment stored near a building on the pier). Viewed in this light, this incident poses more than a fanciful risk to commercial shipping, as the damage caused by a negli-

gent launch could be so extensive as to sink such a commercial vessel. The court thus finds that the first prong of the connection test is satisfied.

### b. Substantial Relationship to Traditional Maritime Activity

■ The second prong of the connection test requires that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. In *Oman v. Johns-Manville Corp.*, 764 F.2d 224 (4th Cir.1985), the Fourth Circuit stated, "[W]e must consider four factors in analyzing the relationship a given claim bears to traditional maritime activity: (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and the type of injury; and (4) traditional concepts of the role of admiralty law." *Id.* at 230.

In its more recent opinion of *White v. United States*, 53 F.3d 43, the Fourth Circuit did not apply the *Oman* factors in determining whether the general character of the activity giving rise to the incident is substantially related to traditional maritime activity.[4] However, applying these factors to this case, this court determines the general character of the activity is substantially related to traditional maritime activity. First, the functions and roles of the parties favor exercising admiralty jurisdiction because Mahony, owner of the Vessel, contracted with the Defendant marina to launch the Vessel. Secondly, the types of vehicles and instrumentalities involved also favor the exercise of admiralty jurisdiction. The involvement of the Vessel is more than "tangential to the nature of [the] tort claim[ ]" because Plaintiffs allege the Defendant was negligent in launching the Vessel. *See Oman*, 764 F.2d

4. Instead of applying the *Oman* factors, the Fourth Circuit examined the following cases: *Jerome B. Grubart, Executive Jet, Foremost,* and *Sisson. See White*, 53 F.3d at 47–48.

at 231. Furthermore, Defendant had to use specialized marine launching equipment in order to launch the Vessel. (Plaintiffs' Mem. at 2.) Next the court must consider the causation and the type of injury. This factor weighs in favor of exercising admiralty jurisdiction, as the injury in this case consists of damage to the Vessel when it became partially submerged because the garboard and other drain plugs were not in place when the Vessel was placed in the water.

The final factor concerns "the history and purpose of admiralty law as described by the Supreme Court in *Executive Jet* and *Foremost Insurance*." *Oman*, 764 F.2d at 231. According to *Executive Jet*, the law of admiralty "is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." *Executive Jet*, 409 U.S. at 270, 93 S.Ct. 493. If the storage and maintenance of a vessel at a marina within navigable waters bears a substantial relationship to traditional maritime activity, *see Sisson*, 497 U.S. at 367, 110 S.Ct. 2892, this court believes launching a vessel into navigable waters likewise bears a substantial relationship to traditional maritime activity. *See also White*, 53 F.3d at 47–48 (concluding that a security guard's guarding of a vessel "during its repairs in port provides yet another example of conduct sufficiently connected to traditional maritime activity to confer jurisdiction on the federal courts").

### 3. Ancillary Jurisdiction

■ In any event, even if this court does not have jurisdiction over Plaintiffs' tort claim pursuant to the test summarized in *Jerome B. Grubart*, this court has ancillary jurisdiction over that claim. As the Fourth Circuit has stated,

> A contract between a vessel owner and a repair facility for work on a vessel that has not been withdrawn from navigation is within admiralty jurisdiction. Moreover, when the owner joins a breach of contract claim and a negligence claim arising out of the same facts, a court may properly exercise ancillary jurisdiction over the owner's negligence claim against the repair facility even though the tort occurred when the vessel was not on navigable waters.

*David Wright Charter*, 925 F.2d at 784 (citations omitted). Thus, even assuming that the tort at issue occurred when the Vessel was not on navigable waters or that the general features of this case do not present a potential for disruption to maritime commerce, this court has ancillary jurisdiction. This court has jurisdiction over Plaintiffs' claim for breach of warranty of workmanlike performance because the contract at issue is a maritime contract. Because the breach of contract claim and negligence claim arise out of the same facts, this court has jurisdiction over the negligence claim.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED.**

**AND IT IS SO ORDERED.**